**Cecil Ray WILLIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 56634.**

Court of Criminal Appeals of Texas, Panel No. 1.

March 28, 1979.

Rehearing Denied Jan. 20, 1982.

---

H. Thomas Hirsch, Odessa, for appellant.

Vern F. Martin, Dist. Atty. & Timothy A. Sloan, Asst. Dist. Atty., Midland, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, PHILLIPS and W. C. DAVIS, JJ.

## OPINION

W. C. DAVIS, Judge.

Appeal follows a rape conviction under Article 1183, Vernon's Ann.P.C., where punishment was assessed by the jury at forty years confinement. Appellant raises nine grounds of error. We affirm.

Grounds of error one, two, and three are directed toward the action of the trial court in dismissing a witness subpoenaed on behalf of appellant. Appellant claims such action constitutes an abuse of discretion and argues further that the trial court erred in refusing to grant an attachment for the absent witness and erred in overruling appellant's motion for continuance based on absence of the witness.

Appellant's case had been docketed for four years. Several continuances had been granted appellant, and two attorneys represented appellant during this time. Eventually, appellant's case was given a special setting on October 18, 1976. Subpoenas on behalf of appellant were issued on October 6, 1976, and among those subpoenaed was Walter Weaver, an attorney. Weaver had been appellant's court-appointed counsel in a 1965 guilty plea in Hidalgo County. Weaver was served his subpoena on October 13, 1976. There followed a series of communications between Weaver, the court, and the parties with the end result being that Weaver was excused from his subpoena by the trial court on the day of the trial.

In a hearing on pre-trial motions, the trial court revealed to appellant that he had conversed with Weaver over the telephone

and advised Weaver that his presence would not be required at appellant's trial. Appellant and his attorney both took the stand outside the presence of the jury in support of a motion for continuance based on the absence of Weaver. This testimony indicated that Weaver's presence was required to collaterally attack the 1965 guilty plea as invalid based on the allegation that Weaver's representation of appellant in 1965 was inadequate.[1]

The trial court overruled the motion for continuance and also refused to issue an attachment for Weaver.

The record reflects that the expected testimony of Weaver concerned only the validity of appellant's guilty plea in 1965, and the impeachment value of that conviction. Appellant argues that by dismissing Weaver, the trial court denied him the opportunity to attack the 1965 conviction. As a result, appellant contends, he was prevented from testifying in his own behalf fearing impeachment from the 1965 conviction.

Initially, we note some confusion and argument as to the proper procedure to follow to preserve this error. The State argues that the failure of appellant to include an affidavit of Weaver precludes our review of these alleged errors. *Brito v. State*, 459 S.W.2d 834 (Tex.Cr.App.1970).

■ Where a subpoenaed witness fails to appear after being called, an attachment for that witness should be sought. Article 24.22, Vernon's Ann.C.C.P. If an attachment is denied then a motion for continuance should be made supported by an affidavit or a showing under oath of the expected testimony of the absent witness.[2] If this motion is overruled, a motion for new trial is required supported by the affidavit of the absent witness or a showing under oath of why no affidavit could be obtained, coupled with the expected testimony of the

witness. *Brito, supra; Lewis v. State*, 481 S.W.2d 139 (Tex.Cr.App.1972); *Rodriguez v. State*, 513 S.W.2d 22 (Tex.Cr.App.1970).

■ Here appellant filed no motion for new trial with supporting affidavit from Weaver. Normally such failure would preclude our review of appellant's allegation. However, because of the involvement of the trial court in this matter, we proceed to review appellant's contentions in the interest of justice.

■ There is no question but that the excusing of a subpoenaed witness by the trial court under the facts of this case constitutes error. U.S.C.A.Const.Amend. 6 and 14; Vernon's Ann.Tex.Const., Art. I, Sec. 10; *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019; Articles 1.05 and 29.13, Vernon's Ann.C.C.P.; *Ross v. State*, 504 S.W.2d 862 (Tex.Cr.App.1974). We must now determine if this error harmed appellant.

■ The record is clear that appellant expected to collaterally attack his 1965 conviction with Weaver's testimony. If that conviction was held invalid, appellant expected to testify in his own behalf without fear of being impeached by his criminal history. It is at this point that appellant's argument breaks down. The record contains several other state convictions and one federal conviction. While these convictions may have been inadmissible individually under the doctrine of remoteness, they were without question admissible collectively to show a lack of reformation.[3] *Watkins v. State*, 572 S.W.2d 339 (Tex.Cr.App.1978); *Milligan v. State*, 554 S.W.2d 192 (Tex.Cr. App.1977). Therefore, had Weaver testified and the 1965 conviction been held invalid, appellant was still subject to impeachment by his past criminal convictions.

---

1. The substance of the collateral attack was failure to advise appellant of his right to confront and cross-examine witnesses, and of his right to appeal, coupled with a failure to investigate the facts or to interview witnesses.

2. We realize that in most cases the unexpected absence of a subpoenaed witness precludes ob-

taining an affidavit in support of a continuance. In such situations, a showing under oath of the expected testimony is sufficient.

3. The record reflects that the State knew of this exception to the rule of remoteness and was prepared to use it.

Appellant argues that the right to compel witnesses to appear in his behalf is basic and fundamental. With this proposition, we have no quarrel. We simply note that had appellant received one hundred per cent of his expectations from Weaver's testimony, the result would have remained unchanged. Appellant would still face impeachment by prior criminal convictions even if the 1965 guilty plea was held invalid.[4]

By this opinion we do not recommend the practice of excusing witnesses subpoenaed on behalf of either party. We hold only that based on these facts, the appellant suffered no harm. Grounds of error one, two, and three are overruled.

In ground of error four, appellant complains of the admission, during the punishment phase, of a Harris County conviction for the reason that the record is silent as to whether or not appellant waived his right to confront and cross-examine witnesses or his right of appeal.

When the Harris County conviction was introduced, the objection was as to "identity." The ground of error on appeal does not comport with the trial objection. This ground of error presents nothing for review. *Watkins, supra.* See also *Richards v. State*, 562 S.W.2d 456 (Tex.Cr.App.1977); *Buckner v. State*, 538 S.W.2d 132 (Tex.Cr. App.1976).

Ground of error five complains of the sufficiency of the evidence to support appellant's conviction for robbery in Harris County. Collateral attacks of judgments directed toward sufficiency of the evidence will not be heard. *Ex parte Ash*, 514 S.W.2d 762 (Tex.Cr.App.1974).

In ground of error six, appellant complains of error in the refusal of the trial court to permit appellant to offer testimony of the prosecutrix that every time she had sexual intercourse, her private parts became irritated and that she had difficulty and pain when participating in the act of

intercourse. This ground is wholly without merit.

The record reflects the following dialogue during the cross-examination of the prosecutrix:

"Q. Everytime you had sex, it bothered you, didn't it, irritated your private parts?

"A. Yes.

"Q. All right."

The very evidence toward which the ground of error is directed is in the record and was available for argument. Ground of error six is overruled.

In ground of error seven, appellant complains that the trial court erred in failing to grant his motion in limine regarding prior convictions which deprived appellant of his right.to take the stand in his own behalf. As we have previously noted, appellant's convictions were admissible to show lack of reformation. *Watkins, supra.* Ground of error seven is overruled.

In grounds of error eight and nine, appellant claims error in the overruling of his amended motion for a new trial because he did not have adequate notice of the hearing on the motion nor ample opportunity to subpoena the jurors concerning the allegations of jury misconduct. Appellant further argues that the only competent evidence before the court was the affidavit of appellant's attorney which alone was sufficient to support a finding of jury misconduct. We disagree.

The record shows that the notice of the hearing was mailed by certified mail the day before Thanksgiving. The notice was received at the office of appellant's attorney the day after Thanksgiving; however, the attorney was out of town. When appellant's attorney returned to his office on November 29, 1976, the day of the hearing, he discovered the notice. Immediately, the attorney attempted to subpoena all the members of the jury.

---

**4.** From the record we cannot determine what the nature of appellant's testimony would be even had he taken the stand. Under other circumstances this omission may have been important.

While these facts may show a short time in which to prepare for the hearing, the record reflects the following exchange:

"The Court: What are you trying to tell the Court? Do you want a continuance?

"Attorney: Judge, I'm trying to tell the Court I would like to get these witnesses on the stand...."

At no point did appellant's attorney request a continuance based on lack of notice or absence of witnesses. Articles 29.03 and 29.13, Vernon's Ann.C.C.P. Failure to request a continuance precludes our review of any absent witness allegations.

■■■■■ Concerning the overruling of appellant's motion for new trial, the trial court had several affidavits addressing the issue of jury misconduct. Appellant's attorney, in one of the affidavits, swore that he had overheard the jurors discussing parole and the length of time appellant would serve.[5] The remaining affidavits refute the allegation of misconduct on the part of the jury and were sufficient to support the trial court's action. Juror Tate's affidavit, contained in the record, contains the following:

"We did not consider as part of our deliberations at the penalty phase how long the Defendant would serve in the Texas Department of Corrections and the law of parole was not discussed as part of our deliberations except in the vein that that was a matter which the Court had told us not to consider...."

We find no abuse of discretion in overruling the motion for new trial. *Hill v. State*, 480 S.W.2d 670 (Tex.Cr.App.1972).

Grounds of error eight and nine are overruled. The judgment is affirmed.

Before the court en banc.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

The record reveals that the panel opinion erroneously held that certain testimony was admitted into evidence. The evidence was not admitted before the jury; thus, we grant rehearing to reconsider appellant's sixth ground of error.

Appellant argues that evidence adduced outside the presence of the jury from the complainant that sex bothered her "private parts" should have been admitted "for the reason that the connotation left by Dr. Walton with his testimony was that the victim's private parts were irritated because sex was forced upon her, all of which was highly prejudicial and inflammatory to a jury since it came from a medical doctor."

At trial, the complainant positively identified the appellant as the man who attacked her, knocked out two of her teeth, beat her, tied her up, raped her, then choked her until she was unconscious. The complainant's doctor testified that two hours after the rape, he observed that the complainant had been beaten severely and had been choked. There was a *marked* irritation of the vaginal introitus, to the degree that there "would be ... a great deal of pain along with it."

■■■■ Outside the presence of the jury, the defense attorney questioned the complainant concerning her sexual activities:

"Q. All right. With that predicate in mind, you have had—you are active sexually, are you not, or you were prior to October 9, 1972, is that not correct?

A. I don't know what you mean by that.

Q. You had sex a lot?

A. Not a lot.

Q. You would pick up men in your bar, and carry them—

A. Not true.

Q. Not true?

A. Not true.

Q. Did you pick up—while Dorothy Nettles had that place, did you pick up a shoe salesman and ask him to take you to his motel room, and then come back the next day and show Dorothy Nettles the new shoes that you got?

A. No, sir.

---

**5.** Mere mention of the parole law by the jurors in deliberation does not establish jury misconduct. *Beck v. State*, 573 S.W.2d 786 (Tex.Cr.App.1978).

Q. You never did that?

A. I got some shoes, yes. He gave everybody in the bar we went to a pair of shoes. But I was not living there at that time. And I went on to my home.

Q. Ma'am, I didn't ask you—do you know what I am talking about, the incident I'm talking about?

A. He took two girls from there besides me.

Q. Ma'am, did you ask him to take you to this motel room—

A. No, sir; no, sir.

Q. Who were the other two women that he took?

A. I don't know, two girls that I knew out there.

Q. Ma'am, who were the two girls that you knew?

A. Well, I didn't know them that well.

Q. You don't even know their names?

A. One of them's name was Sue. And the other one was—I can't even remember her name. That's been five or six years ago. They are not even here now.

Q. Ma'am, while you were—while Dorothy Nettles was out at the bar, did you proposition a man by the name of Kelley Peters?

A. No.

Q. And when he refused you, you threw a shuffleboard—or pool table equipment all over the room and left?

A. No, sir.

Q. Did you—are you accustomed and used to walking up to men and grabbing them by their private parts, while you were in that bar?

A. Good heavens, no.

Q. Didn't you do that on various occasions with Don Davis?

A. No, sir. I do not like that boy.

Q. Why, because he wouldn't go to bed with you?

A. That's not worth answering.

Q. Is that true or not?

A. It certainly is not true—"

The defense attorney then asked the following questions which are now contested on appeal,

"Q. Does sex bother you—or did sex bother you before October 9th, in the sense that it would irritate your private parts—

A. No.

Q. I beg your pardon?

A. In which way do you want me to answer that?

Q. Did it irritate your private parts?

A. I don't remember telling any doctor that.

Q. I'm asking whether it did or not, whether it did or not, ma'am?

A. What's that got to do with this?

Q. Ma'am, would you just answer my question?

THE WITNESS: Do I have to?

THE COURT: Yes.

A. Well, yes.

Q. (By Mr. Hirsch): Every time you had sex, it bothered you, didn't it, irritated your private parts?

A. Yes."

Assuming that the excluded evidence in this case was relevant to a contested issue in the case, we conclude that its exclusion was certainly harmless error in light of the evidence that the intercourse was forcible. As further evidence that she was forced to submit to intercourse with appellant, there is the evidence that she was beaten severely, sustaining injuries to her neck, ribcage, and losing two teeth. She also suffered *marked* irritation to the vaginal introitus to the degree that she was in a great deal of pain.

The appellant's motion for rehearing is denied. The judgment is affirmed.

ROBERTS, Judge, dissents.

This is error and cannot be harmless under the circumstances.