**Affirmed and Opinion filed June 19, 2012.**



In The

# Fourteenth Court of Appeals

_____

NO. 14-06-00976-CV
_____

**LOUIS COGNATA, Appellant**

**V.**

**DOWN HOLE INJECTION, INC., Appellee**

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2005-78272**

## OPINION

Louis Cognata appeals an order for sanctions entered against him in favor of Down Hole Injection, Inc. ("DHI"). The order comes from a finding of pre-suit discovery abuse, which arose out of proceedings involving two separate trial courts in different jurisdictions. Finding no error, we affirm.

## BACKGROUND

This appeal comes to us from a local court in Houston, but our story begins farther north, in Nacogdoches, Texas. In October 2005, DHI filed a petition with the 145th District

Court of Nacogdoches County (the "Nacogdoches Court") seeking a pre-suit deposition of Cognata and his attorney, Charles Brown. The petition was filed pursuant to Rule 202 of the Texas Rules of Civil Procedure, which allows a party to investigate a potential claim before filing suit. The stated purpose of DHI's petition was to investigate whether Cognata and Brown had violated a confidentiality agreement and had engaged in other actions adverse to DHI's ownership rights in certain proprietary technology. Cognata filed a response in which he objected to venue in Nacogdoches County and argued that the action should have been brought in Harris County. The Nacogdoches Court granted DHI's petition and signed an order that Cognata be deposed at Brown's office in Houston. The order further indicated that the deposition was subject to a Notice of Deposition with Subpoena Duces Tecum.

When the deposition convened in December 2005, Cognata refused to answer certain questions propounded by DHI. Cognata also failed to produce documents he was instructed to provide pursuant to his subpoena. DHI addressed this noncompliance with a motion to compel filed in the Nacogdoches Court. In that motion, DHI requested an order that Cognata answer its certified questions and continue the deposition with the previously requested documents. Cognata filed a response in February 2006 seeking a protective order from the Nacogdoches Court allowing him to refuse to disclose his privileged trade secrets.

Before the Nacogdoches Court could act, Cognata moved for sanctions against DHI in the 127th District Court of Harris County (the "Houston Court"). The motion was filed under an original cause number distinct from that used in the earlier proceedings. It alleged that DHI had violated the rules of civil procedure and had caused Cognata to suffer undue burden and expense. The Houston Court held a hearing in March 2006, where, for reasons not entirely clear from the record, it also considered DHI's motion to compel. The Houston Court ordered Cognata's deposition to continue at the Harris County Courthouse without ruling on sanctions.

Before the deposition could recommence, Cognata filed a motion to dismiss without prejudice in the Houston Court. In his motion, Cognata argued that DHI lacked the capacity to file a Rule 202 petition because DHI had failed to pay its franchise tax and, consequently, had forfeited its corporate privileges. The record does not reveal that Cognata filed a similar motion with the Nacogdoches Court. Cognata's motion prompted DHI to file an amended petition with the Nacogdoches Court using the name Down Hole Water Management, Inc. d/b/a Down Hole Injection ("Down Hole Water"). Down Hole Water then filed a response to Cognata's motion in the Houston Court, asserting that it was a corporation in good standing and that it could substitute for DHI as the proper name of the Rule 202 petitioner.

On April 7, 2006, the Houston Court held a hearing to consider Cognata's motion for sanctions, motion to dismiss, and other objections relating to the deposition. The Houston Court determined that the Nacogdoches Court would have to rule on whether sanctions were warranted because of improper venue, as well as whether Cognata's motion to dismiss should be granted based on DHI's lack of capacity. The Houston Court also denied Cognata's various objections and ordered his deposition to resume immediately.

The deposition convened in the Harris County Courthouse outside the presence of the trial judge. Shortly into the deposition, Cognata declined to answer questions about DHI, claiming confusion about its identity. The parties decided to call the trial judge to the bench, who then presided over the remainder of the proceedings. Cognata was asked again about his affiliation with DHI and the date of his first introduction to the company. Brown objected to the form of the question and remarked that several companies have been established under the name "DHI." The trial judge overruled the objection, instructed Cognata to answer, and advised him to be forthcoming or to risk being held in contempt. The court later recessed, and after observing that Cognata had failed to produce documents requested by Down Hole Water, the trial judge signed an order that Cognata continue his deposition at another date with the documents in hand.

The deposition resumed on April 19, 2006 at the Harris County Courthouse with the trial judge presiding. One of the first issues the parties attempted to resolve was the terminology to be used during the deposition. Counsel for Down Hole Water attempted to reach an agreement that all references to "DHI" would relate to a specific engineering company located in north Houston where Cognata allegedly had prior dealings. Cognata would not cooperate, testifying, "I don't know what DHI is. It's very confusing to me." The trial judge interrupted, "Sir, figure it out real quick and answer the question, or you are going to be staying with me overnight at this courthouse until we get these answers. Do I sound like I have run out of patience with the foot dragging, stalling and obstructionism that has gone with this?" Counsel for Down Hole Water asked once more, "When I say DHI, what does that mean to you?" Cognata answered, "I need a moment to think." The trial judge determined that Cognata was willfully refusing to answer, held him in contempt, and remanded him to the custody of the sheriff.

Brown's deposition followed immediately after Cognata's removal. While Brown was being deposed, Cognata expressed a willingness to cooperate. The trial judge allowed Cognata's deposition to continue, and when both depositions had finally concluded, the judge suspended her order of confinement.

In June 2006, Down Hole Water filed a motion for sanctions with the Houston Court, arguing that Cognata and Brown had acted in bad faith during the discovery process. Because of their intransigence, Down Hole Water claimed that it had incurred $20,375 in attorney's fees and $889.44 in other expenses. Down Hole Water sought sanctions in these amounts, including an order that Cognata and Brown produce documents still not provided. The Houston Court signed an interlocutory order imposing sanctions for an amount to be determined after the document production was completed. When no further documentation was ever produced, the Houston Court signed a final order for sanctions in the amount requested by Down Hole Water.

Cognata filed a notice of appeal in October 2006. This Court stayed that appeal based on Brown's bankruptcy proceedings until November 2010, when the case was finally reinstated. Around that same period, the Nacogdoches Court set a hearing to discuss the original Rule 202 petition and to determine whether it should be dismissed for want of prosecution. With the depositions already concluded, Down Hole Water decided to nonsuit its petition in the Nacogdoches Court and pursue no further action. Cognata submitted his briefing in this case following the signed order of dismissal.

## ANALYSIS

### A.     The Effect of the Nonsuit

In his first issue, Cognata challenges the jurisdictional viability of the order for sanctions. His argument focuses on the effect of the nonsuit, which, he alleges, vitiated the order for deposition entered by the Nacogdoches Court. Because that original order was rendered a nullity and because the anticipated suit was never filed, Cognata contends that there was no order requiring his compliance and, thus, no basis or jurisdiction for the Houston Court to impose sanctions.

Cognata relies on the principle that a nonsuit extinguishes a case or controversy from the moment the motion is filed. *See Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 100–01 (Tex. 2006) (per curiam); *Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 854–55 (Tex. 1995) (per curiam). This reliance is misplaced for at least two reasons. First, Down Hole Water moved to nonsuit the petition filed in the Nacogdoches Court, not the action filed in the Houston Court, which was initiated by Cognata, a separate party. At the time sanctions were imposed, the original order for deposition was still extant in the Nacogdoches Court, and Cognata had taken no action to challenge it by writ of mandamus. *See In re Akzo Nobel Chem., Inc.*, 24 S.W.3d 919, 920 (Tex. App.—Beaumont 2000, orig. proceeding) (observing that mandamus was the only appellate remedy to interlocutory claim that venue was improper in Rule 202 petition). Cognata cites no authority, and we are aware of none, holding that a nonsuit filed

in one court retroactively strips the jurisdiction of a separate court to impose sanctions, even when the sanctions relate to proceedings common to both.

Second, even if the nonsuit were filed in the same cause and court that had imposed sanctions, the rules of civil procedure make clear that a motion to nonsuit does not affect a court's authority to impose sanctions. Under Rule 162, which authorizes a dismissal or nonsuit, "[a] dismissal . . . shall have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal, as determined by the court." Tex. R. Civ. P. 162. The Houston Court imposed sanctions more than four years before Down Hole Water elected to nonsuit its petition in the Nacogdoches Court. If the rules permit an order for sanctions after a motion for nonsuit has been filed, we perceive no reason why a nonsuit would undermine an order that is already final, especially one entered in a separate court. *See In re Bennett*, 960 S.W.2d 35, 38, 40 (Tex. 1997) (per curiam) (disapproving of holding that gave inordinate weight to a notice of nonsuit and deprived a court of the "inherent power" to sanction the conduct of counsel).

## B.    The Validity of the Deposition Order

In his second issue, Cognata attacks the validity of the Nacogdoches Court's order for deposition. Cognata argues that the order was invalid because, at the time of its petition, DHI was a dissolved corporation and lacked the capacity to bring an action in state court. Cognata also contends that Down Hole Water's amended petition was deficient because it was unsworn.

Cognata proffered evidence that DHI had forfeited its corporate privileges in February 2001 because it had failed to pay its state franchise tax. The evidence also showed that in March 2002 the Secretary of State carried out the forfeiture of DHI's corporate charter.

Under the Texas Tax Code, a corporation without corporate privileges is "denied the right to sue or defend in a court of this state." *See* Tex. Tax Code Ann. § 171.252 (West

2008). Despite such clear language, this statute has historically been limited to prohibit delinquent corporations from bringing cross-actions, not from merely defending lawsuits. *See Mello v. A.M.F., Inc.*, 7 S.W.3d 329, 331 (Tex. App.—Beaumont 1999, pet. denied). The restriction against bringing an action in state court functions as a revenue measure, promoting the collection of state franchise taxes. *G. Richard Goins Constr. Co. v. S.B. McLaughlin Assocs., Inc.*, 930 S.W.2d 124, 128 (Tex. App.—Tyler 1996, writ denied). The Tax Code contains other provisions, however, that enable dissolved corporations to have their corporate privileges restored. *See* Tex. Tax Code Ann. §§ 171.312–.313. Under these provisions, if a corporation pays its delinquent taxes, its disability is removed, and the corporation may sue or defend any action, regardless of whether the cause arose before or during the period of forfeiture. *G. Richard Goins Constr.*, 930 S.W.2d at 128.

A forfeiture of corporate privileges deprives a corporation of the capacity to sue, but incapacity does not make a suit void. *El T. Mexican Rests., Inc. v. Bacon*, 921 S.W.2d 247, 249–50 (Tex. App.—Houston [1st Dist.] 1995, writ denied). Incapacity must be challenged with a verified plea or else it is waived. *See* Tex. R. Civ. P. 93(1); *Lighthouse Church of Cloverleaf v. Tex. Bank*, 889 S.W.2d 595, 600 (Tex. App.—Houston [14th Dist.] 1994, writ denied). This rule favors abatement over dismissal and affords corporations an opportunity to cure the defect by paying their delinquent taxes or requesting that their forfeiture be set aside. *See Lighthouse Church*, 889 S.W.2d at 600 ("Resort to a motion for dismissal should not be granted until the cause of action has been abated, the plaintiff has been given an opportunity to cure the defect, and has failed to do so."); *Cont'l Contractors, Inc. v. Thorup*, 578 S.W.2d 864, 866 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ) ("A plaintiff's right to maintain the suit in the capacity in which he sues is properly raised by a plea in abatement, not by a motion for dismissal.").

Cognata did not challenge DHI's capacity with any filing in the Nacogdoches Court, despite his instruction to do so from the Houston Court. Cognata's motion in the Houston Court was verified, but it was a motion to dismiss, not a motion to abate. Because

7

Cognata did not properly raise a complaint about DHI's capacity, he waived any defect regarding DHI's right to bring an action in state court.[1] *See Lighthouse Church*, 889 S.W.2d at 600.

Cognata further complains that Down Hole Water's amended petition was unsworn. By rule, a petition under Rule 202 must be verified. Tex. R. Civ. P. 202.2(a). Cognata does not clearly explain how the petition's verification impacts the order for sanctions, which is the ultimate focus of his appeal. From what we can discern, the briefing raises two distinct arguments regarding this deficiency.

At one point in his brief, Cognata argues that the deficient petition failed to create a valid order for deposition. Based on our record, we cannot determine that the Nacogdoches Court ever ruled on the amended petition or issued a revised order with the corrected name of Down Hole Water. Because the only existing order for deposition was entered in favor of DHI, Cognata argues that "[i]t was an abuse of discretion to sanction Appellant based on an order authorizing discovery by an entity not authorized to initiate a lawsuit in Texas." This argument merely repeats Cognata's complaint about DHI's legal capacity, and as we have already discussed, this complaint has been waived.

In other parts of his brief, Cognata contends that the unsworn petition never effectuated a valid name substitution. The rules of civil procedure provide that a private corporation "may sue or be sued in its . . . assumed or common name for the purpose of enforcing for or against it a substantive right, but on a motion by any party or on the court's own motion the true name may be substituted." Tex. R. Civ. P. 28. Rule 28 does not mandate the procedural method by which substitution may be accomplished, but the supreme court has clarified that "the correct legal name may be substituted by filing either

---

[1] In his reply brief, Cognata further argues that "[a]ny claim by a defunct corporation must be brought within three years of dissolution or it is extinguished." Cognata did not raise this argument in either his motion to dismiss or his original briefing on the merits. Because this issue was raised for the first time in a reply brief, we need not consider it. *See Zurita v. Lombana*, 322 S.W.3d 463, 477 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (concluding that issue not raised until reply brief is waived).

a motion requesting substitution or a pleading that substitutes the correct legal name for the assumed name." *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 53 (Tex. 2003). A party's legal name must be corrected "at some point before judgment." *Chilkewitz v. Hyson*, 22 S.W.3d 825, 829 (Tex. 1999).

Down Hole Water filed an amended petition with the Nacogdoches Court on April 4, 2006. Though unsworn, the petition was restyled with the corporation's true legal name, and it recited the same reasons for seeking a pre-suit deposition as the original petition. On April 7, 2006, Down Hole Water filed a response to Cognata's motion to dismiss in the Houston Court. The response asserted that Down Hole Water had standing to pursue the action raised in its amended petition; that it was currently in good standing with the Texas Secretary of State; and that it had previously filed assumed name certificates, giving notice that it was doing business as DHI. All subsequent motions, including the motion for sanctions, were brought under the name of Down Hole Water.

In *Sixth RMA Partners*, the supreme court determined that a partnership had substituted for an assumed name with an improper supplemental pleading. *Sixth RMA Partners*, 111 S.W.3d at 54. Despite this procedural mistake, the court held that the improper pleading constituted only a defect in form, which was waived when the opposing party failed to object in writing. *Id.* at 54–55; *see* Tex. R. Civ. P. 90 ("Every defect, omission or fault in a pleading either of form or of substance, which is not specifically pointed out by exception in writing and brought to the attention of the judge in the trial court . . . before the judgment is signed, shall be deemed to have been waived by the party seeking reversal on such account . . . .").

Cognata did not complain to the Houston Court about the defect in Down Hole Water's amended petition, or about any other defects that may have existed in its subsequent pleadings. Moreover, Cognata did not complain at all to the Nacogdoches Court about DHI's incapacity to bring an action in state court. Therefore, even if there were

9

a defect in Down Hole Water's method of substitution, the complaint was waived, and the substitution must be given effect. *See Sixth RMA Partners*, 111 S.W.3d at 55.

## C. Sanctioning the "Respondents"

In his third issue, Cognata argues that the trial court erred by sanctioning him for conduct involving another party.

The trial court entered an order for sanctions against "Respondents" without making any mention of joint and several liability. Cognata and Brown were respondents to the Rule 202 petition, and no one disputes that they are the same respondents referenced in the order for sanctions. Cognata's complaint focuses on the inclusive meaning of this term. He believes that if the sanctions were intended to be imposed on him alone, then the order would have named him expressly to the exclusion of Brown. Because the order sanctions a plural "Respondents" instead, Cognata contends that "it was necessary for the Court to determine the conduct of each party which was, in the opinion of the court, sanctionable and to impose any sanctions based on the conduct of the specific party." Cognata relies largely on *Bodnow Corp. v. City of Hondo*, a case holding that a party cannot be made liable for discovery expenses caused solely by another party's misconduct. 721 S.W.2d 839, 840 (Tex. 1986) (per curiam).

The trial court cited the following misconduct as the basis for imposing sanctions: "Respondents failed to comply in the manner prescribed by the Texas Rules of Civil Procedure by refusing to provide documents and deposition testimony after [having been] ordered to do so . . . ." Even though Cognata is not referenced by name, this finding clearly describes Cognata's own conduct. The record reflects that it was Cognata, not Brown, who refused to testify during the first deposition. Because of that noncompliance, the deposition moved to the Houston Court, where, with the trial judge presiding, Cognata refused again to be forthcoming in his testimony. The trial judge held Cognata in contempt, not his attorney. Indeed, Brown's deposition concluded without interruption that same day. Although Cognata and Brown were both ordered to produce certain documentation, the

record indicates that the documents were owned by Cognata, and that Brown would only have copies by virtue of his being Cognata's attorney.

Cognata has not provided a single record citation showing that Brown engaged in any conduct deserving of sanction. By contrast, the record is replete with examples that Cognata personally violated the orders of both trial courts involved in this action. Contrary to Cognata's argument, there is no suggestion that Cognata has been sanctioned for actions solely committed by another party. His complaint to that effect is therefore meritless.[2]

## D.    The Excessiveness of the Sanctions

In his fourth issue, Cognata complains that sanctions were excessive. We review a trial court's decision to impose sanctions for an abuse of discretion. *See Clark v. Bres*, 217 S.W.3d 501, 515 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles, or whether under the circumstances of the case, the trial court's action was arbitrary or unreasonable. *Id.* at 512–13.

Sanctions must be appropriate and just. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam); *see also* Tex. R. Civ. P. 215.2. To determine whether a trial court's sanctions satisfy this standard, we apply a two-part test. First, we ensure that a direct relationship exists between the improper conduct and the sanction imposed; in other words, we examine whether punishment was imposed upon the true offender and tailored to remedy any prejudice caused by the discovery abuse. *Am. Flood Research*, 192 S.W.3d at 583. Second, we must make certain that the sanction is no more severe than necessary to satisfy its legitimate purpose. *Id.*

The trial court imposed sanctions in this case in the amount of Down Hole Water's attorney's fees and expenses that were occasioned by Cognata's delay, evasion, and

---

[2] Brown has not appealed the trial court's order, and we do not express any opinion on whether sanctions were properly or improperly imposed against him.

11

obstruction. According to Down Hole Water's motion, this amount included only those fees and expenses in excess of what would have been expended had Cognata complied with the deposition order and rules of discovery. Accordingly, there is a direct relationship between the discovery abuse and the sanction imposed. *See Hoefker v. Elgohary*, 248 S.W.3d 326, 330 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (finding direct relationship where evidence showed that sanctions corresponded with same amount of attorney's fees expended on discovery abuses).

Proceeding to the second part of our analysis, Cognata contends that the sanctions were excessive because they were entered after the depositions had concluded, at a time when sanctions were unnecessary to secure compliance with any discovery order. This argument ignores that sanctions can serve other legitimate purposes. As we have previously recognized, the purposes of discovery sanctions are threefold: (1) to secure compliance with the discovery rules; (2) to deter other litigants from similar misconduct; and (3) to punish violators. *Clark*, 217 S.W.3d at 515 n.2. The sanctions here advance the latter two purposes. The trial court observed that Cognata had "dragged his feet," "stalled," and "obstructed" the proceedings. His delay tactics required the filing of a motion to compel, caused a deposition to continue for several hearings over a span of five months, and occupied the court's own time when the deposition could have concluded privately. The court obtained the desired deposition testimony only after holding Cognata in contempt. From this history, it is clear that the trial court considered the availability of less stringent sanctions. We cannot say that the trial court abused its discretion by concluding that monetary sanctions were necessary to deter other litigants from similar schemes and to punish Cognata for his willful refusal to comply with court orders. *See, e.g.*, *Clark*, 217 S.W.3d at 515 (concluding that sanctions were appropriate and just for party's abusive conduct during the deposition); *Chem. Exh. Indus., Inc. v. Vasquez*, 709 S.W.2d 257, 260 (Tex. App.—Houston [14th Dist.]) (rejecting argument that sanctions should not have been imposed because party "eventually complied with court orders although not necessarily in a timely manner"), *rev'd in part on other grounds*, 721 S.W.2d 284 (Tex. 1986).

**E.     The Evidence in Support of Sanctions**

In his fifth issue, Cognata contends that the sanctions order is arbitrary because the motion for sanctions was decided by submission, rather than by hearing, and because no evidence was attached to the motion other than an attorney's fees affidavit.

A court may take judicial notice of its own records and prior pleadings, with or without the request of a party. *See* Tex. R. Evid. 201(c); *In re Estate of Clark*, 198 S.W.3d 273, 275 (Tex. App.—Dallas 2006, pet. denied). In this case, the trial court signed a Judgment of Contempt and Confinement Order after finding that Cognata had "the present ability to answer the questions asked, . . . was instructed to answer by the Court, and . . . failed to do so." This order, which recites additional facts relating to Cognata's discovery abuse, including excerpts from the deposition testimony, was part of the trial court's records, and was included in Cognata's response to the motion for sanctions. We presume that the trial court took notice of its contempt order and considered it as evidence when deciding whether Cognata had engaged in sanctionable conduct. *See Lacy v. First Nat'l Bank of Livingston, Tex.*, 809 S.W.2d 362, 367 (Tex. App.—Beaumont 1991, no writ) ("The trial judge may properly take into consideration the file which is before him in his court as well as the proceedings that are conducted in his presence. And the trial court under these circumstances is presumed to have taken judicial notice." (citations omitted)). Accordingly, we reject Cognata's complaint that there was no evidence for the trial court to consider when deciding whether sanctions were warranted.

**F.     The Attorney's Fees Affidavit**

In his sixth issue, Cognata complains of the adequacy of the attorney's fees affidavit. That affidavit, submitted by counsel for Down Hole Water, contains the following testimony:

> It is my opinion that attorney's fees in the amount of $20,375 would be a reasonable fee for the services required to perform to complete [sic] the depositions of Respondents and directly related to Respondents' failure to

13

comply with the Court's previous orders allowing the Rule 202 depositions and related discovery.

Further, based upon my review of the billing records in this file, Petitioner has incurred case-related expenses, including travel expenses, filing fees and copying expenses in the amount of $889.44 which should also be included in the award for sanctions and which are directly related to Respondents' violations of Rule 215.

Counsel also attested that his assessment was based on the following factors: (1) the novelty and difficulty of the issue involved, and the skill and experience required to perform the services properly; (2) the time and labor expended; and (3) a rate of $250 per hour, which is a customary and reasonable charge in the community for similar services.

Cognata argues that the affidavit "fails to address the basic [*Arthur Andersen*] criteria as applied to any alleged sanctionable conduct." In *Arthur Andersen*, the supreme court listed eight factors that a trial court should consider when determining the reasonableness of attorney's fees. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). The factors to which counsel attested appear on that list. *See id.* Moreover, counsel attested that his services were "directly related" to overcoming Cognata's discovery abuses. This evidence of attorney's fees does not run afoul of any basic criteria discussed in *Arthur Andersen*.

Cognata also argues that the affidavit contains no competent evidence to show that the attorney's fees were reasonable and necessary because counsel's expert opinion is conclusory. This argument is unpersuasive. "In cases in which the judgment is not one for earned attorney's fees, but rather a judgment imposing attorney's fees as sanctions, it is not invalid because a party fails to prove attorney's fees." *Scott Bader, Inc. v. Sandstone Prods., Inc.*, 248 S.W.3d 802, 815 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *accord Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 575–76 (Tex. App.—San Antonio 2011, no pet.). When attorney's fees are assessed as sanctions, no proof of reasonableness or necessity is required. *Miller v. Armogida*, 877 S.W.2d 361, 365 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *Allied Assocs., Inc. v. INA Cnty. Mut. Ins.*

14

*Cos.*, 803 S.W.2d 799, 799 (Tex. App.—Houston [14th Dist.] 1991, no writ); *see also Cire v. Cummings,* 134 S.W.3d 835, 844 (Tex. 2004) ("A trial court can take judicial notice of the usual and customary fees awarded as a discovery sanction."); *Brantley v. Etter*, 677 S.W.2d 503, 504 (Tex. 1984) (per curiam) (disapproving of any inference that a complaining party has a right to a jury trial to determine the amount of attorney's fees as sanctions, and concluding that the amount of such fees is solely within the discretion of the trial court). Therefore, by challenging the evidentiary value of counsel's affidavit to prove whether the fees were reasonable and necessary, Cognata has not demonstrated that the trial court abused its discretion by awarding attorney's fees as sanctions. *Scott Bader, Inc.*, 248 S.W.3d at 817.

## G.     Rule 202 Findings

In his seventh issue, Cognata argues that the Houston Court erred by enforcing a deposition order unsupported by mandatory findings of fact.

Rule 202 specifies that a trial court may enter an order for a deposition to be taken, but "only if" the court finds that (1) allowing the petitioner to take the requested deposition may prevent a failure or delay of justice in an anticipated suit, or (2) the likely benefit of allowing the petitioner to take the requested deposition to investigate a potential claim outweighs the burden or expense of the procedure. Tex. R. Civ. P. 202.4(a). Under controlling precedent, these findings are mandatory in most cases. *See In re Does*, 337 S.W.3d 862, 863–65 (Tex. 2011) (orig. proceeding) (per curiam) (holding that a court could not order pre-suit discovery by the agreement of witnesses over the objection of other interested parties without the required findings); *see also* Tex. R. Civ. P. 191.1 (observing that in some circumstances the parties may agree to modify the procedures and limitations set forth in the rules pertaining to discovery).

Cognata contends that there are no fact findings in support of the Nacogdoches Court's order granting the Rule 202 petition. Because of this "fatal defect," Cognata

believes that a sanctions order arising from the order for deposition must be reversed. We reject Cognata's argument for the following reasons.

First, the Nacogdoches Court did make the required findings when it entered its order for deposition, and the findings tracked the language of the statute.[3] Thus, this case presents a situation unlike that noted in *Does*. *See Does*, 337 S.W.3d at 864 ("The trial court did not make either of these findings.").

Second, even if the Nacogdoches Court's findings were erroneous or conclusory, as Cognata has also suggested, Cognata has not cited any authority that would allow him to collaterally attack the deposition order in this appeal.[4] Mandamus is the proper vehicle to challenge a Rule 202 order when the order seeks discovery from a party against whom suit is anticipated. *See Akzo*, 24 S.W.3d at 920; *Doe(s) v. Haddock*, No. 2-06-402-CV, 2007 WL 940761, at *2 (Tex. App.—Fort Worth Mar. 29, 2007, no pet.) (mem. op.). Even though Cognata could have filed a petition for writ of mandamus in the Twelfth Court of Appeals, the record does not reflect that he attempted to do so. Moreover, assuming there were authority permitting a collateral attack, the focus of Cognata's argument is not that the Nacogdoches Court's order is void for want of jurisdiction. Rather, Cognata's argument appears to be that the deposition order is deficient because the evidence is legally insufficient to support the necessary findings of fact.[5] Challenges to the sufficiency of a

---

[3] The order states: "The court finds that allowing Petitioner to take the above requested depositions will prevent a failure or delay of justice in an anticipated suit because Petitioner will thereby be able to investigate the facts to verify that there are valid grounds for bringing the anticipated lawsuit. The Court further finds that the likely benefit of allowing Petitioner to take the requested depositions to investigate an anticipated suit outweighs the burden or expense of the procedure."

[4] We reject Cognata's argument that this issue can be treated as a direct attack. *See Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005) ("A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against."); *see also Davenport v. E. Tex. Ref. Co.*, 127 S.W.2d 312, 316 (Tex. Civ. App.—Texarkana 1939, writ ref'd) (observing that rules against collateral attacks apply to protect interlocutory orders as well as final judgments).

[5] As Cognata writes in his brief, "The findings in the [Nacogdoches Court's deposition order] are wholly devoid of any fact findings which determine the specific factual basis which justify a Rule 202

16

judgment should not be brought by collateral attack. *See Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005) ("Only a void judgment may be collaterally attacked. A judgment is void only when it is apparent that the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to attack." (citations and internal quotations omitted)); *cf. Willis v. State*, 626 S.W.2d 500, 504 (Tex. Crim. App. 1979) (holding challenge to sufficiency of evidence is impermissible collateral attack). Even if we were to entertain Cognata's challenge, we must note that the Nacogdoches Court conducted a hearing on DHI's original petition, but a transcript of that hearing has not been included in our record on appeal. Thus, we have no means of assessing this complaint.

Finally, although the proceedings in the Nacogdoches and Houston Courts are inextricably connected, the sanctions order entered by the Houston Court is based on the entire course of conduct in which Cognata engaged. This conduct included Cognata's willful violation of the Houston Court's own orders, which were committed in the presence of the trial judge. Cognata has not provided any authority that a deponent may disregard the orders of a district court on the basis that the deponent believes the order of a different court to be erroneous. We decline to hold that a deponent has any such privilege.

## CONCLUSION

We overrule Cognata's seven issues. The trial court's order imposing sanctions is therefore affirmed.


/s/     Adele Hedges
Chief Justice



Panel consists of Chief Justice Hedges and Justices Seymore and Brown.

---

deposition of Appellant. (This is consistent with a lack of evidentiary support in the record on which fact findings could be based.)"

17