**DURADRIL, L.L.C., and Greg Ward, Appellants**

v.

**DYNOMAX DRILLING TOOLS, INC., Dynomax Drilling Tools USA, Inc., and Dean Livingstone, Appellees**

NO. 14–14–00945–CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed February 16, 2017

148

Eric Yollick, The Woodlands, TX, for Appellant.

Isaac Villarreal, Houston, TX, Farbod Farnia, Dallas TX, for Appellee.

Panel consists of Justices Busby, Donovan, and Brown.

## OPINION

Marc W. Brown, Justice

Dynomax Drilling Tools, Inc. (DCan),[1] and Dynomax Drilling Tools USA, Inc. (DUSA)[2] (collectively, Dynomax), brought claims against Duradril, L.L.C.,[3] and Greg Ward,[4] including for declaratory judgment and breach of contract. The jury found that DCan, DUSA, Duradril, and Ward agreed to the terms of an asset purchase agreement (APA) that became effective on July 1, 2013. The jury found that both Duradril and Ward breached the APA and that their breaches were not excused. The jury also found that neither DCan nor DUSA converted Duradril's property and that neither DCan nor third-party defendant Dean Livingstone[5] committed fraud in connection with the asset purchase. The jury awarded Dynomax damages of $1,004,000. The trial court issued final judgment in favor of Dynomax and ordered that Dynomax recover damages from Duradril and Ward jointly and severally.

Duradril and Ward challenge the judgment in twelve issues. Issues one through three present legal-sufficiency and jury-charge issues involving the statute of frauds and its partial-performance exception. In issue four, Duradril and Ward contest the factual sufficiency of the evidence supporting the July 1, 2013 APA. In issues five and six, Duradril and Ward argue that the trial court erred in issuing judgment in favor of DCan because it was not registered in Texas under the Texas Business Organizations Code. In issue seven, Duradril and Ward challenge the trial court's issuing judgment based on ratification. In issue eight, Duradril and Ward contend that the trial court erred in entering an award of damages based on joint and several liability where there was no finding that the damages resulted from the conduct of specific defendants. In issues nine through eleven, Duradril and Ward argue that the trial court erred by not submitting their wrongful-injunction, tor-

---

1. DCan is a Canadian corporation, based in Alberta.

2. DUSA is a Texas corporation, based in Harris County.

3. Duradril is a Texas limited liability company, based in Tomball.

4. Ward and his wife Pam together owned Duradril, and Ward was the managing member.

5. Livingstone was president and shareholder of DCan.

tious-interference, and economic-duress issues to the jury. Finally, in issue twelve, Duradril and Ward assert the evidence was factually insufficient to support that Duradril did not meet its burden to prove conversion. We affirm.

## I. Factual and Procedural Background

In April 2009, Duradril and DCan entered into a distribution agreement whereby Duradril would be the exclusive distributor in the United States of drilling motors and related parts manufactured by DCan. Ward executed the distribution agreement for Duradril, and Livingstone executed it for DCan. Over the next few years, Duradril failed to meet its minimum-purchase requirements under the distribution agreement.

In late 2012, Ward and Livingstone began discussing potential ways to resolve Duradril's increasing arrearage. In February 2013, Ward was shot in the head at work. Over the new few months, as Ward recovered, he and Livingstone resumed their discussions. The most viable solution involved an exchange of Duradril's assets for its debt.

Ward and Livingstone met on June 4, 2013, to discuss an agreement. Livingstone memorialized the "asset deal" in his planner. Ward and Livingstone worked together to identify and value Duradril's accounts receivable and assets to be included in the deal. As of July 1, 2013, Duradril owed DCan $4,056,000 in outstanding debt. The APA was to be effective July 1, 2013, and involved the following "essential material" terms: DCan would clear the payables owed by Duradril; Duradril would transfer to DCan approximately $701,000 of its accounts receivable and just under $2,890,000 in fixed assets, free and clear of

debt; Ward would issue a personal note payable to cover just under $454,000 remaining on the debt and would receive a five-percent interest in DUSA held against the note, with an option to purchase additional shares; and Ward would stay on for four to six months as general manager of DUSA.

On June 18, 2013, DCan filed papers to incorporate DUSA in Texas. On June 30, DCan credited Duradril for just under $3.6 million of its outstanding debt as a "purchase" and showed a balance of just under $454,000. On July 1, 2013, Ward and Livingstone shook hands, and held a meeting with Duradril's staff and informed them that they now would be DUSA employees. Ward became general manager of DUSA and was paid a $10,000 monthly salary. The former Duradril employees began receiving their pay and benefits from DUSA. With regard to Duradril's accounts receivable, after July 1, customer invoices were sent out under DCan's accounting and collected by DCan. Notices went out to Duradril's business contacts stating that "effective July 1, 2013, Dynomax Drilling Tools USA, Inc. has purchased the assets of DuraDril, LLC."

By mid-August 2013, Dynomax discovered that certain assets transferred by Duradril were not free and clear, but rather were encumbered by liens. By early September 2013, attempts by Ward and Livingstone to resolve this issue and enter a written APA had failed. Ward instructed staff to reissue customer invoices, which were supposed to be issued and collected by DCan, "under Duradril's accounting" instead and also instructed staff to not send out invoices at all.

On November 6, 2013, Dynomax filed suit against Duradril and Ward [6] seeking a

---

6. Other defendants included Pam Ward and three corporate entities, none of which is a party in this appeal.

declaration that the APA is valid, binding, and enforceable on the parties thereto. Dynomax also alleged claims for breach of contract, specific performance, unjust enrichment, fraud, corporate veil-piercing, and attorney's fees under chapters 37 and 38. Dynomax alternatively alleged DCan was entitled to collect the $4 million in debt owed less credits for payments made and property transferred by Duradril.

On November 7, 2013, Dynomax obtained a temporary restraining order (TRO) enjoining Duradril and Ward from interfering in the running of Dynomax's business. Duradril and Ward filed counterclaims against Dynomax and third-party claims against Livingstone for fraud, tortious interference, conversion, economic duress, unreasonable debt collection, wrongful injunction, and declaratory judgment. DUSA terminated Ward on November 20, 2013.

At trial, the jury found:

- DCan, DUSA, Duradril, and Ward agreed to the terms of an APA that became effective July 1, 2013;
- Duradril or Ward ratified the APA that became effective on July 1, 2013;
- Duradril and Ward failed to comply with the July 1, 2013 APA;
- Duradril's and Ward's failures to comply were not excused due to prior material breach or fraudulent inducement;
- The sum of $1,004,000 would fairly and reasonably compensate DCan and DUSA for their damages that resulted from Duradril's and/or Ward's failure to comply with the July 1, 2013 APA;

- DCan and DUSA did not convert Duradril's property;
- DCan and Livingstone did not commit fraud in connection with the alleged asset purchase;
- DCan and DUSA did not engage in unreasonable debt collection.

Duradril and Ward filed a motion for JNOV and two supplements. The trial court issued its final judgment—declaring that: Duradril, Ward, DCan, and DUSA agreed to the terms of an APA that became effective July 1, 2013; Duradril and Ward failed to comply with the July 1, 2013 APA; neither Duradril's nor Ward's failure was excused; Duradril or Ward ratified the July 1, 2013 APA; and the July 1, 2013 APA was valid, enforceable, and binding on DCan, DUSA, Duradril, and Ward. The court further ordered that DCan and DUSA have and recover from Duradril and Ward, jointly and severally, damages in the amount of $1,004,000, plus court costs and post-judgment interest at the rate of five percent. The court ordered that Duradril and Ward take nothing on any claims asserted against DCan, DUSA, and Livingstone. Duradril and Ward filed a motion to modify judgment or for new trial, which was overruled by operation of law. Duradril and Ward timely appealed.[7]

Due to Duradril's petition for bankruptcy, we abated the appeal. *See* Tex. R. App. P. 8.1, 8.2. We reinstated the appeal after the bankruptcy court lifted the automatic stay.

## II. ANALYSIS

### A. Standard of review

▮▮▮ When the appellant challenges the legal sufficiency of the evidence sup-

---

7. Just prior to oral argument, counsel for Dynomax and Livingstone filed a letter agreement stating that Ward and Dynomax agreed to certain terms in relation to a Settlement Agreement, which was in the process of being drafted, including that Ward would dismiss his portion of the appeal. Nothing further has been filed with this court.

porting an adverse finding on which he did not have the burden of proof at trial, he must demonstrate that there is no evidence to support the adverse finding. *City of Keller v. Wilson*, 168 S.W.3d 802, 807–08 (Tex. 2005); *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). To successfully challenge the legal sufficiency of an adverse finding on an issue on which he had the burden of proof, the appellant must conclusively establish all vital facts in support of that issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam).

We review the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller*, 168 S.W.3d at 807, 822, 827. We cannot substitute our judgment for that of the fact finder if the evidence falls within this zone of reasonable disagreement. *Id.* at 822. "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp. U.S.A. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). More than a scintilla exists when the evidence would enable reasonable and fair-minded people to reach different conclusions. *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). "However, if the evidence is so weak that it only creates a mere surmise or suspicion of its existence, it is regarded as no evidence." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014). Evidence is conclusive only if reasonable people could not differ in their conclusions, which depends on the facts of each case. *City of Keller*, 168 S.W.3d at 816.

In a factual-sufficiency challenge, we consider and weigh all of the evidence, both supporting and contradict-ing the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 407. We may not substitute our own judgment for that of the fact finder or pass upon the credibility of witnesses. *Id.*

## A. DCan's capacity to bring suit

We first address Duradril's and Ward's related fifth and sixth issues because, if sustained, they would result in rendition of judgment in their favor against DCan. *See* Tex. R. App. P. 43.3; *Bradley's Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999) (per curiam).

Duradril and Ward argue that the trial court erred in rendering judgment in favor of DCan and in refusing to grant JNOV because DCan failed to register in Texas pursuant to section 9.051(b) of the Texas Business Organizations Code and therefore could not bring suit in Texas. *See* Tex. Bus. Org. Code Ann. § 9.051(b) (West 2012) ("A foreign filing entity or the entity's legal representative may not maintain an action, suit, or proceeding in a court of this state, brought either directly by the entity or in the form of a derivative action in the entity's name, on a cause of action that arises out of the transaction of business in this state unless the foreign filing entity is registered in accordance with this chapter.").

Dynomax responds that Duradril and Ward waived their complaint by not filing a plea in abatement. Dynomax further asserts that in any event DCan was not transacting business in Texas. *See id.* §§ 9.251(8) (collecting a debt due the entity), (9) (interstate commerce), 9.252 (section 9.251's list of activities that do not

constitute transacting business in Texas is not exclusive) (West 2012).

 We conclude that Duradril and Ward waived this issue. Incapacity does not render a suit void. *Cognata v. Down Hole Injection, Inc.*, 375 S.W.3d 370, 376 (Tex. App.–Houston [14th Dist.] 2012, pet. denied) (citing *El T. Mexican Rests., Inc. v. Bacon*, 921 S.W.2d 247, 249–50 (Tex. App.–Houston [1st Dist.] 1995, writ denied)). A challenge to a plaintiff's right to maintain the suit in the capacity in which he sues is properly raised by verified motion to abate or plea in abatement, or else it is waived. *Id.* ("Incapacity must be challenged with a verified plea or else it is waived."); *Lighthouse Church of Cloverleaf v. Tex. Bank*, 889 S.W.2d 595, 600 (Tex. App.–Houston [14th Dist.] 1994, writ denied) (citing *Cont'l Contractors, Inc. v. Thorup*, 578 S.W.2d 864, 866 (Tex. Civ. App.–Houston [1st Dist.] 1979, no writ)); *see* Tex. R. Civ. P. 93(1). This rule favors abatement over dismissal because abatement affords corporations an opportunity to cure the defect. *See Cognata*, 375 S.W.3d at 376. Texas courts have held that arguing lack of capacity in an answer, plea to the jurisdiction, motion for summary judgment, or motion to dismiss does not properly raise the issue. *See, e.g., Haddox v. Fed. Nat'l Mortgage Ass'n*, No. 03-15-00350-CV, 2016 WL 2659695, at *4 (Tex. App.–Austin May 6, 2016, pet. dism'd) (mem. op.) (answer, plea to jurisdiction, motion to dismiss); *Cognata*, 375 S.W.3d at 376 (motion to dismiss); *Lighthouse Church*, 889 S.W.2d at 600 (summary-judgment motion); *Thorup*, 578 S.W.2d at 866 (motion for dismissal).

The record reflects that Duradril and Ward urged a directed verdict and moved for JNOV based on DCan's lack of capacity under section 9.051(b). Duradril and Ward also assert that they filed a motion to dismiss on this basis.[8] However, without properly raising capacity in a verified motion to abate or plea in abatement, Duradril and Ward waived any defect regarding DCan's right to bring an action in state court. *See Cognata*, 375 S.W.3d at 376.

 Also within issues five and six, Duradril and Ward argue charge error because jury questions 1 (existence of July 1, 2013 APA), 2 (ratification), and 6 (contract damages) were unclear whether the jury's findings arose from Duradril's and Ward's alleged agreement with DCan or with DUSA. Duradril and Ward contend that this court must presume harmful error under *Crown Life Insurance Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000), because the theories of liability and damages each contain an invalid theory. However, "[a]bsent properly preserved and raised charge error, there is no harm analysis to perform under *Casteel*." *Noell v. City of Carrollton*, 431 S.W.3d 682, 715 (Tex. App.–Dallas 2014, pet. denied) (footnote omitted). Duradril and Ward did not make a timely, specific objection to the broad-form submission of the applicable jury questions (1, 2, and 6) on the ground that they contained an invalid theory, *e.g.*, DCan's lack of capacity to bring suit. *See Casteel*, 22 S.W.3d at 387, 389; *Barnhart v. Morales*, 459 S.W.3d 733, 748 (Tex. App.–Houston [14th Dist.] 2015, no pet.) (citing *Thota v. Young*, 366 S.W.3d 678, 691 (Tex. 2012)); *Murphy v. Am. Rice, Inc.*, No. 01-03-01357-CV, 2007 WL 766016, at *14 n.40 (Tex. App.–Houston [1st Dist.] Mar. 9, 2007, no pet.) (mem. op.) (citing Tex. R. Civ. P. 274). Moreover, we already have

---

**8.** This motion to dismiss is not in our clerk's record, but rather attached in an appendix to Duradril's and Ward's reply brief. In any event, the exhibit is not verified, only seeks dismissal, and states nothing about abatement.

concluded that Duradril and Ward waived any error related to DCan's capacity.

We overrule Duradril's and Ward's fifth and sixth issues.

## B. The APA, the statute of frauds, and the partial-performance exception

We next address Duradril's and Ward's related jury-charge and legal-sufficiency issues concerning the enforceability of the oral APA. First, according to Duradril and Ward, the trial court erred in finding there was an APA with which they failed to comply because there was no written APA, nor was there a finding of full performance or performance in a manner unequivocally referable to the existence of an agreement for the sale of assets or the assumption of liabilities of another. Therefore, they argue, enforcing the APA would violate the statutes of frauds contained in chapters 2 and 26 of the Texas Business and Commerce Code. Second, they argue that the trial court erred in denying their JNOV motion on the same basis. Third, they assert the trial court erred in refusing their jury instruction that would have required a finding of full performance in a manner unequivocally referable to the existence of an agreement for the sale of assets or the assumption of liabilities of another, as required to except the requirement of such a written agreement from the statutes of frauds.

The statute of frauds requires a writing sufficient to indicate that a contract for the sale of goods for the price of $500 or more has been made between the parties and signed by the party against whom enforcement is sought. *See* Tex. Bus. & Com. Code Ann. § 2.201(a) (West 2009). The statute of frauds also applies to agreements that involve "a promise by one person to answer for the debt, default, or miscarriage of another person." *Id.* § 26.01(b)(2) (Thomson Reuters 2015). The

statute of frauds is an affirmative defense to breach of contract and renders a contract that falls within its purview unenforceable. *See id.* §§ 2.201(a), 26.01(a); Tex. R. Civ. P. 94; *Holloway v. Dekkers*, 380 S.W.3d 315, 320 (Tex. App.–Dallas 2012, no pet.). The party pleading the statute of frauds bears the initial burden of establishing its applicability. *See Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 641 (Tex. 2013). Once that party meets its initial burden, the burden shifts to the opposing party to establish an exception taking the oral contract out of the statute of frauds. *See id.* The question of whether an exception to the statute of frauds applies is generally a question of fact. *See Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 705 (Tex. App.–Houston [1st Dist.] 1988, writ denied).

Duradril and Ward objected to the admission of Livingstone's planner based on hearsay and as "a violation of the statute of frauds." Duradril and Ward also objected to Livingstone testifying about "what the deal was when everything went into motion on July 1st, 2013" based on the (UCC) statute of frauds. The trial court overruled the objections. After the jury was excused, the trial court stated that it overruled the objections based on "the plaintiff's position that it is a fully performed agreement" falling outside the statute of frauds. Counsel for Dynomax and Livingstone stated this was "[c]orrect." The trial court further stated that if the purpose of the objection was to "force [Dynomax] to take the position that they've taken ...," then you accomplished it and I think I've given a correct legal ruling if that's their position." Counsel for Duradril and Ward informed the trial court: "Judge, I think you are getting it .... And I mean—yes, obviously—this is an issue that I will at least want to be addressed in the charge." To which the

trial court responded, "Yeah." The trial court also stated: "Because if it's not fully performed—if they had an agreement but it's not fully performed, then it may be— ... one that runs afoul of the statute of frauds." Counsel for Dynomax and Livingstone stated that "it may have been fully performed on that day is kind of my point" and that his "other assertion is that it's been ratified after the fact by performance ... ratification can trump the statute of frauds." And the trial court stated: "Right, and full performance has a materiality aspect, too. It could be 90 percent performed and it's materially performed." Counsel for Dynomax and Livingstone responded, "Yes." The trial court ended the discussion by stating: "Just want to make sure we're on the same page."

Jury question 1 asked: "Did Dynomax Drilling Tools, Inc., Dynomax Drilling Tools USA, Inc., Duradril, L.L.C., and Greg Ward agree to the terms of an asset purchase agreement that became effective on July 1, 2013?" The jury was instructed:

(a) A contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such contract.

(b) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.

(c) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.

You are also instructed that generally an asset purchase agreement involving

the sale of goods in excess of $500 must be in writing sufficient to indicate a contract for sale has been made between the parties and signed by the party against whom enforcement is sought, unless one of the parties has performed or partially performed in a manner unequivocally referable to the existence of the agreement.

Additionally, a contract for the sale of goods is enforceable and does not need to be in writing with respect to the goods for which payment has been made and accepted or which have been delivered and accepted.

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

At the charge conference, Duradril and Ward objected that there was no evidence or insufficient evidence to support the submission of this question to the jury. In addition, they objected that counsel for Dynomax and Livingstone had stipulated "they were arguing full performance, not partial performance." Counsel for Duradril and Ward stated: "Well, either the wording should be 'has substantially performed' or 'fully performed' in a manner unequivocally revocable [sic] to the stipulation agreement based upon the statements and presentation of the parties. That's my objection to Question No. 1." The jury answered question 1, "Yes."

■■■■■ The parties generally do not dispute that the APA is subject to the statute of frauds.[9] They also do not dispute

9. Dynomax asserts that Duradril and Ward did not preserve any statute-of-frauds argument under chapter 26 of the Texas Business and Commerce Code. We need not address

that assertion because the same partial-performance exception is applicable under both chapter 2 and chapter 26. *See Vt. Info. Processing, Inc. v. Mont. Beverage Corp.,* 227

that if the APA properly meets an exception to the statute of frauds, then it may be enforced. However, in their third issue, Duradril and Ward argue that the trial court erred in refusing to provide their "properly worded" instruction on "full" performance (1) because at trial Dynomax and Livingstone "stipulated" in a valid rule 11 agreement to proceeding on only the "full performance exception to the statute of frauds" and (2) "despite the requirement of Texas law that full performance is necessary." [10] The trial court has considerable discretion to determine proper jury instructions. *See Thota*, 366 S.W.3d at 687. We conclude that the trial court did not abuse its discretion by refusing Duradril's and Ward's requested instruction on "full" performance.

First, we disagree that counsel for Dynomax and Livingstone "stipulated" they only were pursuing a "full" performance exception to the statute of frauds. There is no written, signed, and filed rule 11 agreement in the record. *See* Tex. R. Civ. P. 11. Nor does the "same page" discussion during trial demonstrate clear agreement or any stipulation by the attorneys or the parties, made in open court or entered of record, that Dynomax would pursue only a "full" performance exception to the statute of frauds. *See id.* [11] Moreover, within his objection to question 1, counsel for Duradril and Ward acknowledged that counsel for Dynomax and Livingstone either "stip-

ulated on the record" or may have just "stated on the record at least that they were arguing full performance." Because there was no valid rule 11 agreement, the trial court did not violate any duty to enforce such agreement by overruling Duradril's and Ward's objection to question 1 and their requested instruction on that basis.

■ With regard to what Texas law requires, as a general matter, the partial-performance exception to the statute of frauds does not require full or even substantial performance by a party. Under the partial-performance exception to the statute of frauds, contracts that have been partly performed but do not meet the requirements of the statute of frauds may be enforced in equity if denial of enforcement would amount to a virtual fraud. *Berryman's S. Fork, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 418 S.W.3d 172, 192 (Tex. App.–Dallas 2013, pet. denied); *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex. App.–Dallas 2002, pet. denied). "The fraud arises when there is strong evidence establishing the existence of an agreement and its terms, the party acting in reliance on the contract has suffered a substantial detriment for which he has no adequate remedy, and the other party, if permitted to plead the statute, would reap an unearned benefit." *Breezevale*, 82 S.W.3d at 439.

---

S.W.3d 846, 854 n.7 (Tex. App.–El Paso 2007, no pet.) (citing *Rodriguez v. Klein*, 960 S.W.2d 179, 186 (Tex. App.–Corpus Christi 1997, no pet.)).

**10.** Although Duradril and Ward assert that Texas law only provides an exception for "full" performance, when discussing the exception, they also state "[t]he 'part performance' exception to the statute of frauds requires either full performance or partial performance that is unequivocally referable to the specific agreement."

**11.** The cases cited by Duradril and Ward do not persuade us otherwise. Unlike here, the records in those cases reflected that the parties entered into and were bound by specific language in the rule 11 agreements at issue. *Cf. Fortis Benefits v. Cantu*, 234 S.W.3d 642, 651 (Tex. 2007); *AmeriPath, Inc. v. Hebert*, 447 S.W.3d 319, 344 (Tex. App.–Dallas 2014, pet. denied) (statement on record was "the parties *have agreed* [attorney's fees issue] would not—would be submitted to the Court after a trial, not during the trial" (emphasis added)).

 "[P]artial performance takes a contract out of the statute of frauds when the party seeking enforcement of the contract *partially performed.*" *Parks v. Landfill Mktg. Consultants, Inc.*, No. 14-02-01243-CV, 2004 WL 1351545, at *4 (Tex. App.–Houston [14th Dist.] June 17, 2004, pet. denied) (mem. op.) (emphasis added). However, the partial performance must be "unequivocally referable" to the agreement and corroborative of the fact that a contract actually was made. *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 426 (Tex. 2015) (per curiam); *Berryman's*, 418 S.W.3d at 192; *Dekkers*, 380 S.W.3d at 324. "The performance a party relies on to remove a parol agreement from the statute of frauds 'must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced.'" *Berryman's*, 418 S.W.3d at 193 (quoting *Breezevale*, 82 S.W.3d at 439–40). Otherwise, the acts of performance do not tend to prove the existence of the parol agreement the plaintiff seeks to enforce. *Id.*; *Dekkers*, 380 S.W.3d at 324.

 Many of the cases on which Duradril and Ward rely do not apply because they specifically concern oral agreements involving the sale of real property.[12] Nor do we agree with Duradril and Ward that the result in *Dekkers*, where the plaintiff failed to raise a fact issue on the partial-performance exception, controls. Unlike here, the alleged partial performance in *Dekkers* only involved an individual's rendition of his services for payment. *See* 380 S.W.3d at 323–24 ("But a salary compensates for services rendered; if a person receives payment for his services, those services will not act as an exception to the statute of frauds").

Dynomax essentially took the position that the partial-performance exception to the statute of frauds applied because they had fully, or at least partially, performed under the July 1, 2013 APA.[13] The instruction given provided for an exception to the statute of frauds upon a showing that one of the parties "performed or partially performed in a manner unequivocally referable to the existence of the agreement." This was permissible based on case law applying the partial-performance exception. We also note that the Pattern Jury Charge acknowledges the existence of equitable exceptions to the statute of frauds "due to partial or full performance of the oral agreement." State Bar of Tex., Texas Pattern Jury Charges, Business, Consumer, Insurance, Employment PJC 101.34 cmt. at 75 (2014 ed.). The instruction given was not improper because it failed to limit the exception to "full" performance.

12. Payment of consideration is one of three elements required to apply the partial-performance exception to the statute of frauds for an oral contract for the sale of land. *See, e.g.*, *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114, 1116 (1921) (describing three indispensable elements "to relieve a parol sale of land from the operation of the statute of frauds"); *Tijerina v. Gomez*, No. 04-13-00785-CV, 2014 WL 7339362, at *3 (Tex. App.–San Antonio Dec. 23, 2014, no pet.) (mem. op.); *Lovett v. Lovett*, 283 S.W.3d 391, 393–94 (Tex. App.–Waco 2008, pet. denied) (op. on reh'g); *Chambers v. Pruitt*, 241 S.W.3d 679, 687 (Tex. App.–Dallas 2007, no pet.); *Watson v. Druid Hills Co.*, 355 S.W.2d 65, 69 (Tex. Civ. App.– Dallas 1962, writ ref'd n.r.e.); *Massey v. Lewis*, 281 S.W.2d 471, 475 (Tex. Civ. App.–Texarkana 1955, writ ref'd n.r.e.); *Salas v. Salas*, 229 S.W.2d 881, 884 (Tex. Civ. App.–San Antonio 1950, writ ref'd n.r.e.); *Sonnenberg v. Ernst*, 233 S.W. 564, 566 (Tex. Civ. App.– Galveston 1921, no writ).

13. During closing arguments counsel for Dynomax and Livingstone argued both full performance by Dynomax *and* that the APA was "at least partially performed by a party. What party? Us? Dynomax? Reality is, DuraDril's done an awful lot of performance." Counsel for Duradril and Ward did not object.

We further reject Duradril's and Ward's argument that the trial court "failed to instruct the jury that they must corroborate any such partial performance to the existence of the specific agreement sought to be enforced." This alleged failure was problematic according to Duradril and Ward because there were sixteen versions of the APA presented, and the jury could have "found partial performance of one of those versions while enforcing a different version."[14] The charge specifically asked the jury about "an asset purchase agreement that became effective on July 1, 2013." The jury was instructed that an asset purchase agreement involving the sale of goods greater than $500 must be in writing unless "one of the parties has performed or partially performed in a manner unequivocally referable to the existence of the agreement." But question 1 only identified one agreement—"an asset purchase agreement that became effective July 1, 2013." We must presume that the jury followed the instruction given. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 771 (Tex. 2003). It would be speculation to conclude that the jury somehow read the instruction as permitting it to find the existence of the July 1, 2013 APA if one of the parties in fact partially performed some other asset purchase agreement or version of an asset purchase agreement. *See Faust v. BNSF Ry. Co.*, 337 S.W.3d 325, 336–37 (Tex. App.–Fort Worth 2011, pet. denied).

We also reject Duradril's and Ward's argument that the "partial" performance instruction failed to inform the jury that such performance needed to be by Dynomax, not Duradril or Ward. That is, the instruction incorrectly referred to the performance as having been done by "one of the parties." Setting aside their objection seeking an instruction on only "full" performance, which we have already concluded was properly overruled, Duradril and Ward did not otherwise object in the trial court on the basis that the party which partially performed needed to be Dynomax. As a result, Duradril and Ward failed to preserve any additional error in this instruction. *See* Tex. R. App. P. 33.1(a); Tex. R. Civ. P. 272, 274; *Doxey v. CRC–Evans Pipeline Int'l, Inc.*, No. 14-14-01009-CV, 2016 WL 6652727, at *3 (Tex. App.–Houston [14th Dist.] Nov. 10, 2016, no. pet. h.) (mem. op.).

We next consider Duradril's and Ward's related first and second issues, which challenge the legal sufficiency of the evidence supporting the jury's partial-performance finding. Having already overruled Duradril's and Ward's preserved jury-charge issue, we measure the sufficiency of the evidence using the charge given. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000). That is, we consider whether there was more than a scintilla of evidence for a reasonable and fair-minded jury to conclude that one of the parties to the July 1, 2013 APA performed or partially performed in a manner unequivocally referable to the existence of the agreement.

Consistent with their charge argument, Duradril and Ward primarily challenge Dynomax's lack of "full" performance. Duradril and Ward argue that DCan did not forgive the remaining $454,000 in debt until September 2013 and then sued on its debt. They argue that Dynomax failed to issue stock to Ward, conduct a closing, deliver an executed APA, and fill in the blanks of the draft APA. Duradril and Ward point out that Livingstone stated he was not sure whether DCan had paid, performed, and discharged all of Duradril's

14. According to Duradril and Ward, these sixteen separate versions of the alleged APA dated from just after Ward's shooting to late October 2013.

liabilities. They argue that Dynomax was paying for supplies with Duradril's credit card and did not pay on Duradril's loans.

According to testimony by Livingstone and various documents, DCan was supposed to, and did, as of July 1, 2013, credit Duradril for $3.6 million of its outstanding debt for Duradril's transferred assets and accounts receivable in the jointly identified respective amounts of just under $2.9 million and $701,000. There was evidence that DCan incorporated DUSA in mid-June and that, as of July 1, 2013, Dynomax began transacting business involving transferred assets; collecting on transferred accounts receivable; and employing former Duradril employees, including Ward. The jury as fact finder was free to believe Dynomax's version of events related to the July 1, 2013 APA and resolve any inconsistencies in the testimony. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). Viewing the evidence in the light most favorable to the verdict, we conclude a reasonable jury could have found that Dynomax (or, for that matter, Duradril or Ward) partially performed and such performance had no other design than to fulfill the July 1, 2013 APA. Therefore, the jury's finding that Dynomax met the partial-performance exception to the statute of frauds was supported by legally sufficient evidence.

We overrule Duradril's and Ward's first, second, and third issues.

## C. Factual sufficiency of the evidence supporting the APA

■ In their fourth issue, Duradril and Ward complain that the trial court's finding that the parties entered into the APA effective July 1, 2013, based on the jury's answer to question 1, was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

A factual-sufficiency challenge to a jury finding must be raised in a motion for new trial. Tex. R. Civ. P. 324(b)(2); *Daniels v. Empty Eye, Inc.*, 368 S.W.3d 743, 748–49 (Tex. App.–Houston [14th Dist.] 2012, pet. denied). Because Duradril and Ward failed to preserve this issue in their motion for new trial by arguing that the evidence was factually insufficient to support the jury's answer to question 1, we overrule this issue. *See* Tex. R. Civ. P. 33.1(a); *San Juan v. Segovia*, No. 14-14-00407-CV, 2016 WL 3633628, at *1 (Tex. App.–Houston [14th Dist.] July 7, 2016, no pet.) (mem. op.); *Daniels*, 368 S.W.3d at 749.[15]

## D. Ratification

■ In their seventh issue, Duradril and Ward argue that the trial court committed error in conjunction with rendering judgment and making a declaration based on the jury's answer to the ratification issue (jury question 2). Question 2 asked: "Do you find that Duradril[ ] or [ ]Ward ratified an asset purchase agreement that became effective on July 1, 2013?" The jury answered, "Yes." In its final judgment, the trial court declared that Duradril or Ward ratified the July 1, 2013 APA.

Duradril and Ward contend that the trial court's "finding seemed to turn ratification into a theory of recovery" as opposed

15. Even if Duradril and Ward had preserved factual sufficiency, the great weight and preponderance of the evidence does not indicate that the jury's conclusion was clearly wrong or manifestly unjust. Considering and weighing all the evidence, and keeping in mind that we may not substitute our judgment for the jury's or pass upon the credibility of witnesses, *see Ellis*, 971 S.W.2d at 407, we cannot say that the evidence overwhelmingly favors that there was no APA effective July 1, 2013, instead of the scenario advanced by Dynomax.

to an affirmative defense to the statute of frauds. Duradril and Ward also reurge issues one, two, and three—"there was no finding that the alleged asset purchase agreement that Duradril or Ward ratified met the requirements of the statute of frauds."[16] Finally, they contend that the jury's finding was unclear as to who ratified the July 1, 2013 APA because the question was submitted in the disjunctive.

The trial court's declaration restated the jury's finding that either Duradril or Ward ratified the July 1, 2013 APA. However, the trial court did not have to base Dynomax's affirmative recovery on any ratification "claim." Instead, Dynomax's favorable answers on the breach-of-contract claim provided a sufficient basis for the recovery.

During the hearing on Duradril's and Ward's motion for directed verdict, counsel for Duradril and Ward stated that "[t]here seems to be a claim of ratification in the plaintiff's pleadings" by Dynomax.[17] After considering "the breach of contract, the statute of frauds thing," the trial court stated that it was "not going to direct that verdict because I want the jury's answer whether or not there is a contract." The trial court further stated its understanding of ratification: "The ratification, as I understand it, is not a separate cause of action. It's just an instruction on the breach of contract question. And I don't think I have to direct a verdict on it. I just decide whether or not to give an instruction about how parties ratify, correct?" At that point, counsel for Dynomax and Livingstone suggested ratification could be submitted "as a separate question because ratification also trump[s] certain affirmative defenses if you ratify an agreement."[18] The trial court stated that it could submit ratification as a separate question or as an instruction, but not as a separate cause of action, and would make this decision at the charge conference because "there is evidence of ratification."

Moreover, the trial court awarded damages to Dynomax in the amount of $1,004,-000—the exact amount the jury awarded in response to jury question 6 on breach-of-contract damages. Question 6 was predicated on an affirmative answer to question 3 and either a lack of answer or negative answer to questions 4, 4A, 5, and 5A.[19] Question 3 was predicated on an affirmative answer to question 1 or to question 2, and asked whether any of the following failed to comply with the July 1, 2013 APA. The jury answered "Yes" to both Duradril and Ward.[20] Duradril and Ward do not challenge these breach findings. Questions 4, 4A, 5, and 5A asked whether Duradril's

---

16. Duradril and Ward also argue that neither of them admitted to a contract for a sale of goods. *See* Tex. Bus. Com. Code Ann. § 2.201(c)(2). However, we find no indication in the record of any finding or declaration related to any section 2.201(c)(2) exception to the statute of frauds.

17. In their original petition, Dynomax alleged that:

Defendants have recognized the validity of the asset purchase agreement by acting or performing under the agreement or by otherwise affirmatively acknowledging they have ratified the asset purchase agreement or otherwise have performed such that the agreement is wholly valid, binding and enforceable. Once the Defendants ratified the asset purchase agreement they may not later withdraw their ratification and seek to avoid the asset purchase agreement.

18. This is consistent with Dynomax's position on appeal that they requested the ratification finding as another way to defeat the statute of frauds.

19. Duradril and Ward challenge question 6 in their eighth issue.

20. Question 3 was predicated on an affirmative answer to question 1 or question 2.

and Ward's failures to comply were excused due to prior material breach or fraudulent inducement. The jury answered "No" to each of questions 4, 4A, 5, and 5A. Duradril and Ward do not challenge these failures to find an excuse. And we already have considered and rejected Duradril's and Ward's issues related to question 1 and the partial-performance exception to the statute of frauds. Accordingly, the trial court's judgment was sufficiently supported by the jury's findings that the APA existed, that Duradril and Ward breached the contract, and that Dynomax suffered $1,004,000 in contract damages, without a need for any ratification finding.

We overrule Duradril's and Ward's seventh issue.

### E. Joint and several liability for damages

In their eighth issue, Duradril and Ward argue that jury question 6 and the jury's answer provided no material guidance for the trial court to render judgment for damages against either Duradril or Ward. According to Duradril and Ward, the question "contained no measure nor did it break [out] the damages [between] Duradril and Ward" such that the jury could have included damages for promises that only Duradril breached or only Ward breached.[21] Duradril and Ward argue that joint and several liability for contract damages is available only where joint promises exist. See CTTI Priesmeyer, Inc. v. K & O Ltd. P'ship, 164 S.W.3d 675, 684 (Tex. App.–Austin 2005, no pet.) ("[J]oint and several liability arises in contract based upon the relationship between the parties and the existence of what amounts to joint promises.").

Question 6 asked:

What sum of money, if any, if paid now in cash by any of the following, would fairly and reasonably compensate [DCan] and [DUSA] for their damages, if any, that resulted from Duradril and/or Greg Ward's failure to comply with the July 1, 2013 asset purchase agreement?

Do not include any amount for interest on past damages. Answer in dollars and cents, if any.

Answer: $_____

You are instructed that the damages, if any, are to be calculated based upon [DCan] and [DUSA's] benefit of the bargain. The benefit of the bargain in this case is the total of all outstanding liens and encumbrances, if any, on the assets transferred to [DCan] and [DUSA], plus any applicable interest, plus any amounts that Greg Ward failed to pay under the terms of the July 1, 2013, asset purchase agreement.

Duradril and Ward objected to question 6 on the ground that there was no evidence or insufficient evidence to support the submission of the issue. The jury answered, "$1,004,000."

Duradril and Ward did not otherwise object to question 6 on the ground that it included an incorrect measure of damages. See Beach Capital P'ship, L.P. v. Deep-Rock Venture Partners LP, 442 S.W.3d 609, 618 (Tex. App.–Houston [1st Dist.] 2014, no pet.) ("The error preservation requirements of Rule 274 apply to incorrect measures of damages, just as to other aspects of the jury charge."); Kamat v. Prakash, 420 S.W.3d 890, 909 (Tex. App.–Houston [14th Dist.] 2014, no pet.). Therefore, Duradril and Ward failed to preserve any such defects in the jury charge.

---

**21.** They contend that the maximum amount of Ward's performance obligations would amount to $804,000, equal to the $454,000 note plus asset liens totaling $350,000.

██ Nevertheless, Duradril and Ward insist that the failure to segregate actual damages proximately caused by Duradril's breach as opposed to those caused by Ward's breach presented a fatal flaw in the charge. According to Duradril and Ward, the wording of question 6 permitted a double recovery because if the jury found that Duradril agreed and failed to pay $454,000 to DCan for debt and Ward also agreed and failed to pay such amount to DCan for debt, then the jury was required to double that amount in its answer. Duradril and Ward also contest the lack of a predicate joint-promises finding.[22]

We find no fatal flaw in the charge. Nothing in the measure-of-damages instruction required the jury to double Dynomax's benefit-of-the-bargain recovery. The instruction defined benefit of the bargain as the total of all outstanding liens and encumbrances on the assets Duradril transferred to Dynomax—which allowed the jury to exclude the last $454,000 of Duradril's debt given the evidence that the transferred assets did not include such amount, plus any amounts Ward failed to pay under the July 1, 2013 APA—which allowed the jury to include Ward's $454,000 note. The instruction did not instruct the jury to count any portion of Dynomax's loss twice. Duradril and Ward do not contest the legal sufficiency of the evidence to support Dynomax's damages caused by the nonpayment of Ward's $454,000 note. Nor do Duradril and Ward argue that Dynomax otherwise failed to present legally sufficient evidence of damages of at least $550,000 of liens and encumbrances on the transferred assets plus interest such that the $1,004,000 award necessarily included a double recovery on Ward's $454,000 note.

In addition, "[t]he lack of a jury finding on [Duradril's and Ward's] joint and several relationship or their joint promise [does not] preclude a finding of the same where the jury findings indicate that a single contract was under review." *Kang v. Derrick*, No. 14-13-00086-CV, 2014 WL 2048424, at *13 (Tex. App.–Houston [14th Dist.] May 15, 2014, pet. denied) (mem. op.) (citing *K–Bar Servs., Inc. v. English*, No. 03-05-00076-CV, 2006 WL 903735, at *3 (Tex. App.–Austin Apr. 7, 2006, no pet.) (mem. op.)); *K–Bar Servs.*, 2006 WL 903735, at *2–4 (rejecting argument that "there is no jury finding that supports assessing all of the damages against all appellants jointly and severally"). In question 1, the jury found that DCan, DUSA, Duradril, *and* Ward agreed to the terms of the July 1, 2013 APA. In question 3, the jury found that both Duradril *and* Ward failed to comply with the *same* oral agreement, the July 1, 2013 APA. *See Kang*, 2014 WL 2048424, at *13; *K–Bar Servs.*, 2006 WL 903735, at *3 ("[T]he jury findings relating to the contract theory include a finding of a single, or joint, agreement by appellants."). The jury's findings are also consistent with Dynomax's original petition, which sought to hold both Duradril and Ward jointly and severally liable for breach of the same APA. *See Kang*, 2014 WL 2048424, at *13; *K–Bar Servs.*, 2006 WL 903735, at *4. We therefore conclude that joint and several liability is sufficiently supported by the pleadings and the jury findings on Dynomax's contract claims.[23]

---

22. Duradril and Ward further contend that they were not required to object to an immaterial finding. However, they provide no explanation of what makes question 6 immaterial.

23. Again, we already have overruled Duradril's and Ward's challenges to question 1 and they do not challenge the jury's breach findings in question 3.

We overrule Duradril's and Ward's eighth issue.

## F. Wrongful injunction

■ In their ninth issue, Duradril and Ward argue that the trial court erred by refusing to submit their wrongful-injunction issue to the jury because there was legally sufficient evidence to support submission.

■ The type of wrongful-injunction claim at issue here is predicated upon a breach of the condition of the injunction bond. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 685 (Tex. 1990).[24] "That condition, as prescribed by Rule 684, Texas Rules of Civil Procedure, is 'that the applicant will abide [by] the decision which may be made in the cause, and that he will pay all sums of money and costs that may be adjudged against him if the restraining order or temporary injunction shall be dissolved in whole or in part.' " *Id.* (quoting Tex. R. Civ. P. 684). To prevail, the claimant must show that the TRO or temporary injunction was issued or perpetuated when it should not have been, and that it was later dissolved. *Id.* The damages recoverable on an injunction bond are limited to the amount of the bond. *Id.* at 686. The claimant must prove that issuance of the TRO or temporary injunction caused him damages. *Id.* And the claimant cannot recover for having been prohibited from doing something that he had no right to do. *Id.*

We conclude that the trial court did not reversibly err by refusing to submit a jury question on this issue because Duradril and Ward failed to assert in their counter-petitions, nor was there any evidence presented, that Dynomax breached any condition of the bond.[25] *See Tanguy v. Laux*, No. 01-13-00501-CV, 2015 WL 3908186, at *4 (Tex. App.–Houston [1st Dist.] June 25, 2015, pet. denied) (mem. op.) (rejecting claimant's argument that he presented a fact issue and holding trial court did not err by not submitting jury question where "Tanguy has not asserted that Laux breached any condition of the bond").

We overrule Duradril's and Ward's ninth issue.

## G. Tortious interference

In Duradril's and Ward's tenth issue, they argue that the trial court erred by refusing to submit their issue on tortious interference with existing contracts and with prospective business relationships to the jury because there was legally sufficient evidence to support submission.

■ The elements of tortious interference with an existing contract are: (1) the existence of a contract subject to interference; (2) the occurrence of an act of interference that was willful and intentional; (3) the act was a proximate cause of the plaintiff's damage; and (4) actual damage or loss occurred. *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 857 (Tex. App.–Houston [14th Dist.] 2001, pet. denied). "To prevail on a tortious-interference claim, a plaintiff must present evidence that the defendants interfered with a specific contract." *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.–Houston [14th

---

24. The other type of wrongful-injunction claim is for malicious prosecution, which requires the claimant to show that the injunction suit was prosecuted maliciously and without probable cause, and was terminated in his favor. *See DeSantis*, 793 S.W.2d 670, 686 (Tex. 1990).

25. In the trial court's order on Dynomax's application for TRO, the court stated that its order would not be effective unless and until Dynomax either executed and filed a bond executed by them for $5000 conditioned as required by law or deposited $5000 into the court's registry.

Dist.] 2011, pet denied). In addition, to establish the element of a willful and intentional act of interference, the plaintiff must produce evidence that the defendant was a more-than-willing participant and knowingly induced one of the contracting parties to breach its obligations under the contract. *Id.* To do so, the plaintiff must present evidence that an obligatory provision of the contract was breached. *Id.*

With regard to existing contracts, there was evidence of the 2009 distribution agreement between Duradril and DCan. However, "the person who induces the breach cannot be a contracting party." *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995); *see In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 761 (Tex. 2006). As a result, DCan could not have tortiously interfered with its own distribution agreement. Nor was there any evidence indicating that DUSA's or Livingstone's actions in connection with the distribution agreement were "completely contrary" to the interests of DCan such that DUSA (as wholly-owned subsidiary) or Livingstone (as corporate agent) could be subjected to any liability. *See In re Vesta*, 192 S.W.3d at 761–62.

In addition, Duradril and Ward primarily complain of general "stealing" by Dynomax and Dynomax's interference in Duradril's business with "other suppliers," "third-party suppliers and manufacturers," "current vendors," and "creditors." These assertions do not present evidence of interference with a specific contract. *See Funes*, 352 S.W.3d at 213. Ward did testify about Duradril's contracts with lenders Concur and Diversified, but there was no evidence that Dynomax knowingly induced Concur or Diversified to breach an obligatory provision under a contract it had with Duradril. *See id.* at 214; *John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*, 17 S.W.3d 721, 731–32 (Tex. App.–Austin

2000, pet. denied) (JNOV proper on tortious interference where "there is no evidence that Jade persuaded anyone to breach its contractual relationship with Paul Mitchell"). In fact, Ward testified it was Duradril that was "[un]able to complete [its] commitment to those lenders." Therefore, because there was insufficient evidence to support the submission of Duradril's issue on tortious interference with an existing contract, the trial court did not commit reversible error. *See Hiles v. Arnie & Co., P.C.*, 402 S.W.3d 820, 830, 833 (Tex. App.–Houston [14th Dist.] 2013, pet. denied).

The elements of tortious interference with a prospective business relationship are: (1) a reasonable probability that the plaintiff would have entered into a business relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference. *Baty*, 63 S.W.3d at 860. "To prevail on a claim for tortious interference with a prospective business relationship, the plaintiff must establish that the defendant intentionally prevented the formation of the business relationship." *Id.*

With regard to prospective business relationships, Ward stated that there were "three separate potential deals which didn't close." However, these "deals" concerned the sale of another of Ward's companies, not Duradril. Moreover, Ward acknowledged that he was not "even sure [they] were potential deals" but that "maybe" some due diligence had been conducted. These statements do not raise a

fact issue regarding a reasonable probability that Duradril would have entered into a business relationship. *See SP Midtown, Ltd. v. Urban Storage, L.P.*, No. 14-07-00717-CV, 2008 WL 1991747, at *9 (Tex. App.–Houston [14th Dist.] May 8, 2008, pet. denied) (mem. op.) (no fact issue raised where plaintiff "did not produce evidence of clients with which it had even begun negotiating"); *Armijo v. Mazda Int'l*, No. 14-03-00365-CV, 2004 WL 1175335, at *2 (Tex. App.–Houston [14th Dist.] May 27, 2004, pet. denied) (mem. op.) (same where "[a]ppellant failed to identify, or present any evidence of, any such prospective relationship"). Nor does this evidence raise a fact issue that Dynomax even participated in, much less committed any tortious or unlawful act intended to prevent the formation of, any such "deal." *See Baty*, 63 S.W.3d at 861. Therefore, because there was insufficient evidence to support the submission of Duradril's issue on tortious interference with a prospective business relationship, the trial court did not commit reversible error. *See Hiles*, 402 S.W.3d at 830, 833.

We overrule Duradril's and Ward's tenth issue.

## H. Economic Duress

In their eleventh issue, Duradril and Ward argue that the trial court erred by not submitting their economic-duress issue to the jury because it was supported by legally sufficient evidence.

The elements of economic duress or business coercion are: (1) the defendant threatened to do some act that it had no legal right to do; (2) the threat was of such a character as to destroy the plaintiff's free agency; (3) the threat overcame the plaintiff's free will and caused it to do what it otherwise would not have done and that it was not legally bound to do; (4) the restraint was imminent; and (5) the plain-

tiff had no means of protection. *See In re Frank Motor Co.*, 361 S.W.3d 628, 632 (Tex. 2012) (citing *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 837 (Tex. App.–Houston [1st Dist.] 1999, no pet.)).

Ward testified that nobody at DCan—specifically, Livingstone—ever threatened him with anything illegal to make him allow Dynomax to take possession of Duradril's assets on July 1, 2013. Ward agreed that "there was no threat by anybody to do anything that they had no legal right to do" or "threatened [him] with anything." No one threatened Ward with physical abuse or threatened to do "bad things" to him or his family if he did not turn over or allow Dynomax to take possession of Duradril's assets. Ward agreed that no one harassed him to the point of his having "no choice" but to hand Duradril's assets over. Ward stated that he "allowed [Livingstone] to be able to help out" Duradril in conjunction with Duradril's transfer of its accounts receivable. According to Ward, Duradril's assets were transferred "willingly" based on and under the terms of an "arrangement." And Ward was not put into "a no-win, no-choice situation."

Because Duradril and Ward failed to raise a fact issue that Dynomax threatened to do some illegal act in connection with the July 1, 2013 APA, or that any threat was of such character to destroy, much less overcame, Duradril's and Ward's free will, the trial court did not commit reversible error in refusing to submit their economic-duress issue. *See Hiles*, 402 S.W.3d at 830, 833.

## I. Conversion

In their twelfth issue, Duradril and Ward contend the trial court's finding, based on the jury's verdict, that Duradril failed to meet its burden to support its conversion claim was so contrary to the

overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. Question 10 asked the jury whether any of DCan or DUSA converted Duradril's property. The jury answered "No" as to each.

Because Duradril and Ward failed to preserve this issue in their motion for new trial by arguing that the evidence was factually insufficient to support the jury's answers to question 10, we overrule this issue. *See* Tex. R. Civ. P. 33.1(a); *San Juan*, 2016 WL 3633628, at *1; *Daniels*, 368 S.W.3d at 749.

### III. CONCLUSION

Having overruled all of Duradril's and Ward's issues, we affirm the trial court's final judgment.