

# NUMBER 13-16-00422-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

SENSIBLE CARE HOLDINGS, LLC,
ALAN GUGGENHEIM, AND
SUZANNE GUGGENHEIM                                        Appellants,

v.

BURL AND MARIAN SENS,                                        Appellees.

On appeal from the County Court at Law No. 2 of
Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Longoria and Hinojosa
Memorandum Opinion by Justice Longoria**

Appellants Sensible Care Holdings, LLC, Alan Guggenheim, and Suzanne

Guggenheim (collectively the "Buyers"), appeal the disposition in the trial court following

a jury trial for breach of contract and fraud about the sale of an ambulance business in

which appellees received a judgment for $395,000.00, attorney fees, interest, and court costs. In four issues, the Buyers argue that there was factually and legally insufficient evidence to support the jury's damage findings, the jury charge failed to specify the proper elements of contract damage, the jury's findings regarding appellees' fraud and breach of contract went against the great weight and preponderance of the evidence, and there was factually and legally insufficient evidence to support the award of attorney's fees. We affirm.

## I.  BACKGROUND

On December 2, 2011, the Buyers entered into a contract to purchase Sens-ible Care, Inc., an ambulance company, from appellees, Burl and Marian Sens (collectively the "Sellers"). Buyers purchased the company with an initial cash payment of $550,000.00, a promissory note in the amount of $180,000.00, and a second promissory note, the amount of which was to be calculated based on the receivables collected for pre-closing services received within nine months of the closing date, less any liability, interest, or offset.

The two promissory notes formed the basis of the underlying breach of contract claim brought by the Sellers. The promissory note signed on behalf of Sensible Care Holdings, LLC was in the original principal amount of $180,000.00, payable to the Sellers, with a guarantee of payment signed by the Buyers in their individual capacities. The trial court heard testimony from both parties that in or about July 2013, the Buyers ceased making payments on the promissory note, and it is undisputed that the remaining principal balance on that note was $113,854.11.

The second note represents additional damages sought by the Sellers for breach of contract. The agreement, in relevant part, provided that the Sellers would loan Sensible

2

Care Holdings, LLC working capital on the following terms and conditions, to wit: for nine months after closing date, the Sellers will do the billings and appeals for ambulance runs with a service date on or prior to the closing date and assist Sensible Care Holdings, LLC with the operation of the business. Sensible Care Holdings, LLC agreed to segregate and deposit all funds received for such pre-closing ambulance runs, provide copies of all deposit records and relevant reports to the Sellers and credit the Note account for the Sellers with all collected amounts. Further, the agreement, in relevant part, provided that at the end of the nine month period, Sensible Care Holdings, LLC would execute a second promissory note in a form substantially similar to the $180,000.00 promissory note payable to the Sellers in the amount of the collected accounts receivable for those ambulance runs with a service date on or prior to the closing date, net of any liability, interest or offset. The agreement provided that such note would be payable in forty-eight monthly installments and would bear simple interest at the rate of 6% per annum. The Buyers promised to personally guarantee payment of the note. The gross amount collected for pre-closing runs during the applicable time period agreed to in the contract was $226,331.16. No payments were made.

The Sellers brought suit against the Buyers for fraud, civil conspiracy and conversion, and breach of contract. The Buyers filed an answer and counterclaim alleging the Sellers were guilty of fraud and misrepresentation and further that any lack of performance found on the Buyers' behalf should be excused due to the deceptive, fraudulent, and otherwise illegal conduct of the Sellers. The Buyers alleged that prior to the sale, the Sellers withheld information relating to regulatory changes in payments by Medicare for dialysis patients, which the Buyers argue was material to the business and

3

further claimed that the Sellers misrepresented the cash position of the company prior to sale, violating the terms of their agreement.

The jury unanimously found that the failure to comply with the agreement by the Buyers was not excused; that the Sellers were not guilty of a breach of warranty given to the Buyers; that the Sellers were not guilty of fraud through material misrepresentations of fact to the Buyers; that the Sellers were not guilty of fraud through failure to disclose material facts to the Buyers; and that the Sellers did not commit statutory fraud against the Buyers with regard to the sale of shares in Sens-ible Care, Inc. The jury awarded contract damages in the amount of $395,000.00 plus trial and appellate attorney fees, interest, and court costs to the Sellers. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

The Buyers argue sufficiency of the evidence in issues one, three, and four. We address each in turn in this section.

## A.    Standard of Review

We may sustain a legal sufficiency challenge only when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Damian v. Bell Helicopter Textron, Inc.*, 352 S.W.3d 124, 156–57 (Tex. App.—Fort Worth 2011, pet. denied). "Evidence does not exceed a scintilla if it is so weak as to do no more than create a mere surmise or suspicion that the fact exists." *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009) (internal quotation marks omitted). We review the record and consider evidence favorable to the finding if a reasonable

4

factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilso*n, 168 S.W.3d 802, 822 (Tex. 2005). We view the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that supports it. *Id.* The final test for legal sufficiency is always "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827. In a factual-sufficiency challenge, we consider and weigh all of the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 407. We may not substitute our own judgment for that of the fact finder or pass upon the credibility of witnesses. *Id.*; *see Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147, 156 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

## B. Damages Award

By their first issue, the Buyers argue that there was legally and factually insufficient evidence to support the jury's damage finding of $395,000.00 because the jury awarded damages in excess of any amount calculable or asked for.

### 1. Applicable Law

The general rule for measuring damages for the breach of a contract is "just compensation for the loss or damage actually sustained." *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991); *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. 1952); *Dakil v. Lege*, 408 S.W.3d 9, 12 (Tex. App.—El Paso 2013, no pet. h.); *Bowen v. Robinson*, 227 S.W.3d 86, 96 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). A non-breaching party is ordinarily entitled to all actual damages necessary to put this party in the same economic

position in which it would have been if the contract had not been breached.  *Dakil v. Lege*, 408 S.W.3d 9, 12 (Tex. App.—El Paso 2013, no pet.).

### 2. Discussion

Here, the jury heard evidence of the contractual agreement entered into by both parties, including the signed promissory note and the agreement regarding the unsigned second note.  There was evidence of unpaid contractual balances on both the purchase money promissory note as well as the agreed upon collection amount for pre-closing receivables collected by the Buyers between December 2, 2011 through September 2, 2012.

Both parties testified that there was an outstanding balance on the signed promissory note of $113,854.11.  There was further testimony from both parties that there was an agreed upon amount of pre-closing receivables collected during the relevant time period totaling $226,331.16.  The jury heard testimony from both sides regarding whether there were any offsets, liability or interest amounts relevant to the pre-closing receivables.  Furthermore, the jury heard additional information regarding additional receivables collected beyond the relevant time period.  Between September 2, 2012, and April 30, 2013, the Buyers collected an additional $67,622.67 in pre-closing accounts receivable.  The agreement entered into allowed for the Sellers to collect their pre-closing accounts receivable on runs paid during the nine-month period after the sale, which ended September 1, 2012.

The reviewing court assumes that jurors made all inferences in favor of their verdict if reasonable minds could, and disregards all other inferences.  *City of Keller,* 168 S.W.3d at 821.  The reviewing court cannot substitute its judgment for that of the jury, so long as the evidence falls within the zone of reasonable disagreement.  *See id.* at 822.  If the jury

inferred that the additional money from pre-closing runs collected after the relevant time period did in fact belong to the Sellers, taken together with the outstanding initial purchase money note and the second unsigned note, the award of $395,000.00 in damages is within the range supported by the evidence. Thus, viewing the evidence favorable to the jury's finding and disregarding the evidence and inferences contrary thereto, we hold that the evidence is legally sufficient to support the jury's finding assessing damages in the amount of $395,000.00. *See id.* at 827; *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). Moreover, considering all of the evidence, the evidence supporting the same finding is not so weak or the evidence to the contrary is not so overwhelming that the jury's answer should be set aside and a new trial ordered. *See Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965); *see also Dunnagan v. Watson*, 204 S.W.3d 30, 48 (Tex. App.—Fort Worth 2006, pet. denied).

We conclude the evidence for the jury's damage award is legally and factually sufficient because it permits a rational jury to determine the credibility of the witnesses and truth of the information presented to them, allowing them to make a rationally based decision on the amount of damages to be awarded. We overrule the Buyers' first issue.

## C.     Findings Regarding Breach of Contract and Fraud

By their third issue, the Buyers argue the jury's findings that the Sellers did not breach the contract or commit fraud go against the great weight and preponderance of the evidence.

### 1.     Applicable Law

The essential elements in a suit for breach of contract are: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) that the plaintiff was damaged because of the breach.

7

*Garza v. Carmona*, 390 S.W.3d 391, 398 (Tex. App.—Corpus Christi no pet.); *Doss v. Homecoming Financial Network, Inc.,* 201 S.W.3d 706, 712 (Tex. App.—Corpus Christi 2006, pet. denied). A breach may occur if (1) a party acts in a way inconsistent with the party's contractual obligations, *see, e.g., American Nat'l Ins. Co. v. Tri-Cities Constr., Inc.*, 551 S.W.2d 106, 108 (Tex. Civ. App.—Houston [1st Dist.] 1977, no writ), or (2) a party wrongfully interferes with another party's performance, *see Longview Constr. & Development, Inc. v. Loggins Constr. Co.*, 523 S.W.2d 771, 779 (Tex. Civ. App.—Tyler 1975, writ dism'd by agr.).

The elements of common law fraud are: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made the representation recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation intending that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

The elements of statutory fraud in a stock transaction are: (1) a false representation of a past or existing material fact; (2) made to a person for the purpose of inducing that person to enter into a contract; and (3) relied on by that person in entering into that contract. TEX. BUS. & COMM. CODE ANN. § 27.01 (West, Westlaw through 2017 1st C.S.).

## 2. Discussion

The agreement for the sale of Sensible Care contained two relevant provisions: (1) the Sellers were required to provide accurate financial records to the best of their knowledge, and (2) the Sellers warranted that there would be no material change in the

8

business.  The Buyers first argue the Sellers used incorrect business records in their dealings with the Buyers during the course of the sale.  Marian Sens testified that while the record may have been inaccurate, the inaccuracy was explained to the buyers prior to the sale and additional accurate information was also given.  Her testimony negates the argument that the information provided was false, that the information was intended to represent a positive assertion, and that Sellers intended for the Buyers to rely on the information in entering the contract.  The jury is the sole judge of the witnesses' credibility, and it may choose to believe one witness over another, and a reviewing court may not impose its own opinion to the contrary.  *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).  When presented with conflicting testimony, the fact finder may believe one witness and disbelieve others, and it may resolve inconsistencies in the testimony of any witness.  *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).  The testimony of Marian Sens supports the jury's findings that the inaccurate information did not amount to fraud or breach of contract.

Second, the Buyers argue that the Sellers knew of a material change occurring in the industry which would greatly affect the business of the Buyers.  Prior to the sale in 2011, Medicare changed their policy regarding dialysis claims which make up a significant portion of the ambulance runs performed by Sensible Care.  The Sellers' testimony was that they verbally shared the information regarding the upcoming policy change in Medicare with the Buyers prior to the sale.  The Buyers' testimony conflicts with the position of the Sellers, saying they were unaware of the significant change until it began to negatively impact their business.  It is the province of the jury to resolve conflicts in the evidence.  Accordingly, courts reviewing all the evidence in a light favorable to the verdict must assume that jurors resolved all conflicts in accordance with that verdict.  *City of*

9

*Keller*, 168 S.W.3d at 820. In every circumstance in which reasonable jurors could resolve conflicting evidence either way, reviewing courts must presume they did so in favor of the prevailing party, and disregard the conflicting evidence in their legal sufficiency review. *Id.* at 821. Even if evidence is undisputed, it is the province of the jury to draw from it whatever inferences they wish, so long as more than one is possible and the jury must not simply guess. *Id.* We, therefore, find that the jury was within their discretion to believe the testimony of the Sellers which presented evidence to support the verdict. We overrule the Buyers' third issue.

## D. Attorney's Fees

By their fourth issue, the Buyers argue there was factually and legally insufficient evidence to support the jury's finding on attorney's fees.

### 1. Applicable Law

Parties claiming attorney's fees must "segregate fees between claims for which they are recoverable and claims for which they are not" and are "required to show that attorney's fees were incurred while suing the defendant sought to be charged with the fees on a claim which allows recovery of such fees." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006); *Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 73 (Tex. 1997); *Emerson Elec. Co. v. Am. Permanent Ware Co.*, 201 S.W.3d 301, 316 (Tex. App.—Dallas 2006, no pet.). An exception to the duty to segregate arises when the party's claims are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts. *Tony Gullo Motors,* 212 S.W.3d at 311; *Emerson Elec. Co.*, 201 S.W.3d at 316. The need to segregate attorney's fees is a question of law, but the extent to which certain claims can or cannot be segregated is a mixed question of law and fact. *See Tony Gullo Motors*, 212 S.W.3d at 312–13. Generally, a party seeking

10

attorney's fees must segregate fees between claims for which they are recoverable and claims for which they are not. *Id.* at 311. The Texas Supreme Court created an additional limited exception to the general rule requiring segregation when it allowed recovery of attorney's fees if necessary to defeat both affirmative defenses and counterclaims. *Varner v. Cardenas*, 218 S.W. 3d 68, 69 (Tex. 2007). Texas law allows an attorney's fee claimant to recover its defense costs for successfully defending against affirmative defenses and counterclaims as long as necessary to fully prevail on an affirmative contract claim for which attorney's fees are recoverable. *Id.*; *Anglo Dutch Petroleum Int'l, Inc. v. Care Funding Network, L.P.*, 441 S.W. 3rd 612, 634 (Tex App.—Houston [1st Dist.] 2014 pet. denied).

### 2. Discussion

#### a. Lodestar Method and Adequate Documentation

We begin with the legal sufficiency of the evidence and the Buyers' argument that the fees were not supported by adequate documentation. The Buyers rely on *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757 (Tex. 2012) to argue that an attorney's fees award must be supported by some evidence of the actual work performed. The Buyers suggest that such evidence is lacking here because the Sellers' attorney did not submit his billing records or give detailed testimony about the hours expended on each task or the attorney who performed the work. *El Apple* involved the calculation of fees under the lodestar method and should not apply equally here because the fees in the present case were awarded under section 38.001. *See Halsey v. Halter*, 486 S.W.3d 184, 187 (Tex. App.— Dallas 2016, no pet.). The Court distinguished the lodestar method from a traditional attorney's fees award by stating, "[w]hile Texas courts have not routinely required billing records or other documentary evidence to substantiate a claim for attorney's fees, the

11

requirement has merit in contested cases under the lodestar approach." *Id.*; *see El Apple I,* 370 S.W.3d at 762.

> The lodestar method of calculating attorney's fees first "achieved dominance" in federal class actions. *Gisbrecht v. Barnhart*, 535 U.S. 789, 801, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002). Texas courts similarly adopted lodestar initially for fee setting in class actions, and the Texas Legislature subsequently mandated the method's use in such cases. *See* TEX. CIV. PRAC. & REM. CODE § 26.003(a) (providing that "the trial court shall use the Lodestar method to calculate the amount of attorney's fees to be awarded class counsel").

*El Apple I*, 370 S.W.3d at760. There is no assertion, nor does the record reflect, that the lodestar method was required in the present matter, nor did appellee try to prove up attorney's fees using this method. We therefore conclude that the lack of documentation does not render the evidence legally insufficient to support the fee award in this case.

### b. Segregation of Attorney's Fees

Next, we address whether the attorney's fees were properly segregated and if not, whether they were established to fit into an exception from the segregation requirement. It is undisputed that counsel did not segregate the recoverable attorney's fees from those that would not be recoverable, therefore we focus our analysis on whether the fees in this instance needed to be segregated. Attorney's fees are recoverable in breach of contract claims, but not for claims of fraud. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West, Westlaw through 2017 1st C.S.).

> "But the fees necessary to prove particular claims often turn on such facts—how hard something was to discover and prove, how strongly it supported particular inferences or conclusions, how much difference it might make to the verdict, and a host of other details that include judgment and credibility questions about who had to do what and what it was worth. Given all these details, it may often be impossible to state as a matter of law the extent to which certain claims can or

12

> cannot be segregated; the issue is more a mixed question of law and fact for the jury."

*Tony Gullo Motors*, 212 S.W.3d at 313. As it was in *Tony Gullo Motors,* it is certainly true that the Sellers' fraud and breach of contract claims were both "dependent upon the same set of facts or circumstances," but that does not mean they all required the same research, discovery, proof, or legal expertise. *See id.* There may, of course, be some disputes about fees that a trial or appellate court should decide as a matter of law. For example, to prevail on a contract claim a party must overcome any and all affirmative defenses (such as limitations, res judicata, or prior material breach), and the opposing party who raises them should not be allowed to suggest to the jury that overcoming those defenses was unnecessary. *Id.* at 314.

A review of the record gives this Court an understanding of how the claims, counterclaim defenses, and responses to affirmative defenses were intertwined. Each of the claims addressed by the Sellers was based on one main document, the agreement for the sale of the company. Similar to the claims in *Pegasus Energy Group, Inc. v. Cheyenne Petroleum Co.*, while the Sellers are alleging the Buyers committed fraud, the research and representation involved in establishing and presenting this claim were intertwined with their claim that the Buyers had breached the contract. 3 S.W.3d 112, 131 (Tex. App.—Corpus Christi 1999, pet. denied). "At a basic level, Cheyenne believed Pegasus committed fraud because it was not paying its proportionate share of the costs of the well, which in turn set forth that Pegasus misrepresented its ability to pay when the contracts were negotiated. Thus, we conclude the same facts and the same preparation formed the basis of Cheyenne's suit for breach of contract and its suit for fraud." *Id.* Here, the claims for fraud and for breach of contract both go to the crux of the underlying suit,

13

the lack of payments being made for the purchase of the company as well as nonpayment for the agreed upon pre-closing accounts receivable runs.

For this reason, we conclude the claims arise from the same transaction and are so interrelated as to entail proof or denial of essentially the same facts. In order to adequately represent the Sellers, their attorney would have reviewed and studied every aspect of the agreement for the sale of the company and the monetary notes contained therein. Within this process, the attorney would be setting forth the main claim that the Buyers breached the contract by not paying the purchase money note nor the pre-closing accounts receivable. In order to defend this claim, the Sellers' attorney would be looking at the entire relationship between the parties to insure that both had abided by the terms of the agreement. *See id.* at 131–132.

Therefore, we conclude the Sellers were not required segregate their attorney's fees. We overrule the Buyers' fourth issue.

### III.    JURY CHARGE ERROR

By their second issue, the Buyers argue the jury charge relating to the Sellers' damages failed to specify the proper elements of breach of contract damages.

### A.    Standard of Review and Applicable Law

We review complaints of error in the jury charge under an abuse-of-discretion standard. *See Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006); *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000); *Niemeyer v. Tana Oil & Gas Corp.*, 39 S.W.3d 380, 387 (Tex. App.–Austin 2001, pet. denied). To reverse a judgment based on a claimed error in the jury charge, a party also must show that the error probably resulted in the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1); *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002); *Niemeyer*, 39 S.W.3d at 387; *see also Elness Swenson*

14

*Graham Architects, Inc. v. RLJ II-C Austin Air, LP*, 520 S.W.3d 145, 158–59 (Tex. App.—Austin 2017, pet. filed).

A jury submission on damages is fatally defective if it fails to guide the jury to a finding on any proper legal measure of damages. *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 90 (Tex. 1973), *citing International-Great Northern R. Co. v. Casey*, 46 S.W.2d 669 (Tex. Comm. App. 1932, holding adopted). To determine whether the instruction probably caused an improper judgment, we examine the entire record. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998).

The goal of measuring damages for a breach-of-contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach. *Mays v. Pierce,* 203 S.W.3d 564, 577 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). The normal measure in such cases is the benefit of the bargain, which seeks to place the injured party in the economic position it would have been in had the contract been performed. *Id.*; *see Texas Ear Nose & Throat Consultants, PLLC v. Jones,* 470 S.W.3d 67, 79 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

## B.    Analysis

In the charge, the jury was asked to consider what, if any, damages were due to either party in this breach of contract claim. The clear language of the questions instructs the jurors to award damages that were the result of the wrongful acts that the jury found the Buyers committed intentionally and that were the proximate cause of the Sellers' damages. This is a correct statement of the law and would not have led the jury to make an improper damage award. *See Rio Grande Land & Cattle Co. v. Light*, 749 S.W.2d 206, 211 (Tex. App.—San Antonio 1988), *rev'd in part*, 758 S.W.2d 747 (Tex. 1988).

15

The Buyers argue that the trial court failed to define the proper elements and measure of damages, leaving the jurors to speculate and consider other factors, citing *Planet Plows v. Evans*, 600 S.W.2d 874 (Tex. Civ. App.—Amarillo 1980, no writ) (reversing damage award where charge did not define multiple damage elements). However, "the jury was only presented with evidence of one measure of damages, a measure that was, as argued by the defendants, proper for a breach of contract action." *Rio Grande Land & Cattle Co.*, 758 S.W.2d at 211. The trial court did not abuse its discretion in overruling the Buyers' objections to the jury charge. We overrule the Buyers' second issue.

## IV. CONCLUSION

We affirm the judgment of the trial court.

NORA L. LONGORIA
Justice

Delivered and filed the
25th day of January, 2018.

16